## Staunton.

### BANK OF RADFORD V. KIRBY.

#### September 11, 1902.

1. USURY—*Transfer of Paper—Guaranty by Seller of Face Value.*—If the holder of paper transfers it at a greater rate of discount than the legal rate of interest, and gives an absolute and unconditional guaranty of the payment of the face value of· the paper, the transaction is usurious.
2. USURY—*Application of Payments.*—Where payments have been made upon a debt upon which more than the legal rate of interest has been reserved in the contract, or received, in order to secure the forbearance of the lender, and the borrower himself applies the payment to the interest, or the lender makes the application with the assent of the borrower, the appropriation so made will not be disturbed, unless, within one year thereafter, a suit be instituted by the borrower for its recovery.

Appeal from a decree of the Circuit Court of Pulaski county, pronounced March 19, 1902, in a suit in chancery, wherein the appellee was the complainant, and the appellant and another were the defendants.

*Reversed.*

The opinion states the case.

*D. S. Pollock,* for the appellant.

*I. H. Larew,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

The facts out of which this appeal arises are as follows: On the 1st day of January, 1895, H. S. Kirby made an assignment

Opinion.

by deed to J. D. Chumbley and J. A. Pratt, trustees, of all his property, both real and personal, to secure his various creditors. Among the assets conveyed was a debt against one L. T. Jennings for the sum of $6,500, evidenced by eight notes, dated August 14, 1894; the first seven of the notes being for the sum of $800 each, and the last for $900, and all bearing interest from the 1st day of September, 1894, and being for a part of the purchase money for a tract of land conveyed by the said H. S. Kirby and wife to Jennings. This tract consisted of 605 acres, but to secure the payment of the aforesaid notes a vendor's lien was retained by Kirby on only 100 acres of the tract, Kirby covenanting in the deed to look only to the vendor's lien retained upon the 100 acres for the payment of the sum of $6,500, evidenced by the said notes.

Among the debts for which H. S. Kirby made provision in his assignment to Chumbley and Pratt, trustees, was a debt due to the Bank of Radford for the sum of $1,700, evidenced by a note, and the sum of $1,500, evidenced by another note, which had been renewed but was not yet due. Elizabeth Kirby, the mother of H. S. Kirby, was one of the endorsers on these two notes, and some other notes also secured by the deed of assignment.

In March, 1895, after the bank had brought suit on the $1,700 note against H. S. Kirby as maker, and Elizabeth Kirby and others as endorsers, Elizabeth Kirby concluded that she would take an assignment of the property which H. S. Kirby had conveyed to Chumbley and Pratt, trustees, for the benefit of his creditors, and make herself responsible for the debts thereby secured. The object she had in view was to get time within which to meet the debts for which she was bound as endorser, and protect her own property against liability therefor in case the trust property should prove insufficient to pay them.

To effect this arrangement, ultimately agreed to by the creditors thereby secured, including the Bank of Radford, H. S.

Kirby and wife, Chumbley and Pratt, trustees, and all of the creditors provided for in the trust deed, joined in a deed to her (which is spoken of in this record as a "composition deed") conveying all of the trust property, and she, by the same deed, created a charge upon 600 acres of her own land as security for the payment of the debts of the creditors of H. S. Kirby, provided for in his deed to Chumbley and Pratt, trustees, with interest on these debts from March 1, 1895.

In this deed, the debt of the Bank of Radford, evidenced by the two notes, the one for $1,700, and the other for $1,500, is provided for, and stated to be $3,250, with interest from March 1, 1895, the difference being on account of accrued interest on the $1,700 note and costs in the suit brought thereon previously. By this deed Elizabeth Kirby covenanted and bound herself to take the property conveyed to her in trust for the payment of the debts mentioned therein, and to sell, collect and apply the proceeds therefrom to that purpose alone.

About the time, or shortly before, the "composition deed" of March 5, 1895, was executed, Elizabeth Kirby applied to the Bank of Radford, through a friend, as her agent, to find out whether, in the event she perfected the arrangement then contemplated, it would buy from her the Jennings debt, and the bank at that time stated that it did not desire such paper; but, after some delay and insistance on the part of Mrs. Kirby's agent, it finally agreed to purchase the debt, and made her a tentative offer therefor which was thereafter to be more accurately stated. Some days afterwards the sale and transfer of the Jennings debt by Mrs. Kirby to the Bank of Radford was effected. Up to this time Jennings had not executed the bonds, but they were then executed by Jennings to H. S. Kirby, and Mrs. Kirby endorsed her name in blank upon each of them, and delivered them to the bank, the bank agreeing to pay her the sum of $5,090.13, and she to execute, acknowledge and have admitted to record a deed of trust to one R. L. Gardner, trustee.

reciting the fact that she had sold, transferred and assigned the Jennings bonds to the bank for value received; and, as the vendor's lien retained on only 100 acres of the Jennings land was deemed insufficient security for their payment, she conveyed a tract of 200 acres of land in trust as further security for the payment of the said bonds, and to secure their prompt payment to the bank at maturity, and for no other purpose, providing, that if Jennings should make default in the payment of either of the bonds, she was to have 120 days' notice of such default before the trustee (Gardner) was authorized to proceed to sell the land thereby conveyed. This deed to Gardner, trustee, was duly executed by Mrs. Kirby, and admitted to record.

In making this sale of the Jennings debt to the bank, it was agreed between Mrs. Kirby and the bank that the debt payable to the bank above mentioned, which Mrs. Kirby had assumed, and for the payment of which she had provided in the "composition deed," should be allowed as part of the purchase price of the Jennings debt, and the balance of the purchase price placed to the credit of Mrs. Kirby at the bank, which was done; and that balance was shortly thereafter drawn out by her.

When the first of the series of the Jennings bonds became due and payable, Jennings failing to pay the same, the bank brought an action at law thereon against him and recovered the amount thereof; and when the second of the series became due and payable, and Jennings failed to pay, the bank brought suit in equity to enforce the vendor's lien retained on the 100 acres of the Jennings land. To this suit Mrs. Kirby was made a party, and she filed her answer to the bill, practically admitting the bank's ownership of the Jennings bonds, and its right to have the 100 acres of land subjected to the payment thereof. Under the decree of sale in that suit Mrs. Kirby became the purchaser of the 100 acres of land, at the price of $2,000, and paid the purchase money to the commissioner of the court, and by the same decree which confirmed the sale and directed a conveyance

to her, it was decreed that the commissioner pay the costs of the suit out of the purchase money, and then pay off the Jennings bond for $800, with interest, which fell due September 1, 1896, and the bond for $800 and interest due September 1, 1897.

At the next term of the court, in March, 1898, the commissioner having made his report, a final decree was entered in the cause, stating: "It appearing to the court from said report that after the payment of costs there remained the net sum of $1,880.78 to be applied to the payment of the Jennings bonds; that said net sum was sufficient to pay off the bond, with its accrued interest, which became due September 1, 1896, and leaves a net balance of $927.98, to be credited on the bond due September 1, 1897, as of November 5, 1897; and that the commissioner so applied the said sum, showing a balance due on the latter bond of only $24.82, as of November 6, 1897; and there being no exceptions to said report, the same is confirmed, and all the purposes of this suit having been accomplished, the same is stricken from the docket."

On the 10th day of April, 1900, the bank, having previously exhausted its resources against Jennings, and the fourth of his bonds being due and payable, gave notice to Mrs. Kirby of Jennings' failure to pay as provided for in the deed of trust given by her to Gardner, trustee. On August 30, 1900, the trustee advertised the land conveyed by her for sale, to pay the bonds then due and payable, and on the first Monday in November following Mrs. Kirby filed her bill at rules in the clerk's office of the Circuit Court of Pulaski county against the bank and Gardner, trustee, alleging usury in the transaction with her by which the bank became the purchaser of the Jennings bonds, and praying that the sale of the land by the trustee be enjoined. To this bill, the bank filed its answer, denying that it had loaned any money to the complainant, and asserting that the transaction between it and the complainant was a *bona fide* sale of the Jennings bonds to the bank.

Upon a final hearing of the cause, the Circuit Court, by its decree, held that the transaction was usurious; that the bank was only entitled to the sum of $5,090.13, without interest, being the amount received by the complainant for the Jennings bonds, and that the complainant was entitled to have the sum of $2,728.78, paid by Jennings and applied to these bonds as they fell due, deducted from said principal sum of $5,090.13; thus allowing the bank for its debt against the complainant only the sum of $2,361.35, with interest from the date of the decree, and requiring the bank to pay the costs of the suit. From this decree the bank obtained an appeal to this court.

The legislation in this State on the subject of usury is reviewed at length in the opinion of this court by Keith, P., in *Munford* v. *McVeigh,* 92 Va. 446, and requires no further discussion here. As was there said: "Hereafter it would seem that in cases involving the charge of usury, the only questions to be considered, are first, was there usury in the transaction; and second, where payments have been made upon an usurious transaction, how should those payments be applied." There, also, many of the decided cases involving these questions are reviewed, and they, as well as the numerous cases cited in the argument of this case, agree that whether or not there was usury in the transaction is to be determined from the facts and circumstances of the particular case under consideration."

"If the usury be established, the measure of relief will be that the lender can only recover the principal sum loaned or forborne, subject, of course, to the rule laid down in *Munford* v. *McVeigh, supra,* touching the application of payments." *Greer* v. *Hale,* 95 Va. 533.

Mr. Minor, in discussing the "Doctrine of Usury" (3 Minor's Inst., part 1, pp. 306-7 and 8), cites a number of cases in which it was held that the particular transaction under review was or was not usurious, and says: "It should further be observed, that an apparent assignment of a security may sometimes in fact

*amount to a loan,* as where the assignor, having parted with a
security at a greater discount than the legal rate of interest, be-
comes by law, or by special agreement, liable for the *full amount*
due on its face.    Endorsers of negotiable securities are thus
liable by law; and the assignor of a common law security may as-
sume a similar responsibility by special contract; and in these
cases, therefore, an endorsement or assignment at a discount, ex-
ceeding the prescribed rate of interest, is usurious." In support
of this statement of the law, the cases of *Whitworth* v. *Adams,* 5
Rand. 33, and *Bell* v. *Calhoun,* 8 Gratt. 22, are cited, and the
correctness of those decisions has never been questioned.

In words other than those employed by the learned author just
quoted, no matter by what shift or device a lender of money is to
receive therefor a rate of interest or profit greater than is al-
lowed by law, the transaction is to be regarded as usurious.

What, therefore, is the transaction we have under review?   It
cannot be questioned, in fact, it seems not to be controverted,
that the undertaking of appellee is an absolute and unconditional
guaranty of the payment of the several instalments of the Jen-
nings debt, principal and interest, at maturity.   The provision in
the contract that she was to have notice of the default of Jen-
nings before the land was advertised for sale to pay what was
due the appellant, in no way qualifies that guaranty, and appel-
lee's liability for the Jennings debt, regardless of his solvency or
his ability or willingness to pay, attached immediately on enter-
ing into the contract.   In effect, the appellant said to appellee,
I will not buy the Jennings debt at any rate of discount, but if
you will guarantee the payment of its several instalments at ma-
turity, and without condition, and make your guaranty good by
deed of trust on real estate, I will pay you $5,090.13 for the
debt so guaranteed and secured.   This was exactly the trans-
action between the parties, and the result of it was that the ap-
pellee received from the appellant the sum of $5,090.13, for
which she gave her unqualified and unconditional guaranty,

made good by deed of trust on her land, to pay back to the appellant the amount of the Jennings debt, with accrued interest, at maturity; the difference between the amount she received from appellant and the amount of the Jennings debt, with interest at maturity, being, as is conceded, 9 *per cent. per annum* on the $5,090.13. This was nothing more nor less than a device or shift by which the appellant, for $5,090.13 loaned or advanced, was to receive from the borrower, the appellee, $6,500, and interest thereon at 9 *per cent.* in instalments—3 *per cent. per annum* in excess of the rate of interest allowed by law, and, therefore, the Circuit Court did not err in so treating the transaction.

The transaction being a loan, and usury thereon established, the appellant can only recover the principal sum loaned, but as to the application of the amounts received by the appellant on account of the Jennings debt, the rule laid down in *Munford* v. *McVeigh, supra,* is to govern, viz: that "where payments have been made upon a debt upon which a greater rate of interest than that allowed by law is reserved in the contract, or received, in order to procure the forbearance of the lender, and the borrower himself applies the payment to the interest, or the lender makes the application with the assent of the borrower, the appropriation so made will not be disturbed unless within one year thereafter a suit be instituted by the borrower for its recovery."     .     .     .     .     .     .     .     .     .     .     .     .

The appellant received the amount due on the first of the series of Jennings bonds—$848—in 1895, and on November 6, 1897, it received the further sum of $1,880.78 from the sale of the 100 acres of land upon which a vendor's lien had been reserved to secure the payment of those bonds, making a total of $2,728.78 received, and these payments were applied to the payment of the Jennings debt, pursuant to the agreement between the appellant and the appellee, and by authority of the court in a suit to which appellee was a party. The application of these payments, so made, cannot be disturbed, since this suit,

in which, for the first time, the appellee asks relief from the usury in her transaction with the appellant, was not instituted till November, 1900, much more than one year after the last of the payments were made. Sec. 2823 of the Code; *Exchange Bank* v. *Fugate*, 93 Va. 821.

Leaving undisturbed the application of these payments to the satisfaction of the debt due from appellee, the appellant was entitled to a decree against her for the balance of the debt remaining unpaid, with interest *only* from the date of the decree, together with the benefit of the security for its payment afforded by the deed to Gardner, trustee, above mentioned. The decree appealed from, in so far as it is in conflict with this view, is erroneous, and will, in this respect, be reversed and annulled, and the cause be remanded to be further proceeded with in accordance with the views herein expressed, but as the appellant is the party substantially prevailing in this court, the costs of this appeal will be decreed in its favor against appellee.

*Reversed.*