Cash Service Company *v.* George Ward, Banking Commissioner, *et al.*

(No. 8501)

Submitted April 28, 1937. Decided June 1, 1937.

*Strother & McDonald,* for appellant.

*Clarence W. Meadows,* Attorney General, *Ira J. Partlow,* Assistant Attorney General, and *Walter L. Brown,* for appellees.

HATCHER, JUDGE:

This appeal involves application of Chapter 13, Acts Regular Session 1933, commonly known as the Small Loans Act.

Plaintiff, Cash Service Company, a corporation, engages in the special business of acquiring assignments of earned wages, not exceeding fifty dollars, upon the fol-

lowing plan: It gives the wage earner a check for ninety per cent of the assignment, with a merchandise coupon attached for ten per cent of the assignment. Plaintiff then recommends to the wage earner a list of merchants, each of whom has contracted with plaintiff to accept the coupon in exchange for merchandise at regular prices, provided the entire check is expended with the merchant. This recommendation constitutes plaintiff's consideration to the merchant, for honoring the coupon. If the wage earner follows the recommendation he obtains the full value of his wages in merchandise, but in nothing but merchandise; if he discards the recommendation and cashes his check in whole or part, he forfeits the merchandise coupon. In either event, plaintiff receives a profit of eleven and one-ninth per cent for the few days it is out the advance made the wage earner. Plaintiff has no state license. Plaintiff charges that defendant, George Ward, Banking Commissioner, and defendant, J. P. Clifford, Prosecuting Attorney of Harrison County, have instigated criminal prosecutions against it for doing a small loan business without a license and in violation of the Act, and seeks to have the prosecutions enjoined. From a final adverse ruling of the circuit court, plaintiff secured the appeal.

The Small Loans Act contains the following restrictions: "Section 1. No * * * corporation shall engage in the business of making loans of money, credit * * * in the amount or of the value of three hundred dollars or less, and charge, contract for or receive on any such loan a greater rate of interest, discount or consideration than six per cent per annum, except as authorized by this act and without first obtaining a license from the commissioner of banking * * *." Section 18. "No * * * corporation, except as authorized by this act shall * * * charge, contract for, or receive any interest, discount, or consideration greater than six per cent per annum upon the loan * * * of money * * * or upon the loan, use or sale of credit of the amount or value of three hundred dollars or less."

Plaintiff contends that these restrictions would im-

pair its contracts with merchants as well as its right of contracting with wage earners, and is therefore unconstitutional. The constitutional prohibition against impairing the obligation of contracts applies only to contracts lawfully made and not to usurious contracts which, by oppressing the necessitous, oppose public policy. "The contract clause of the Federal Constitution does not give validity to contracts that are properly prohibited by statute." *Griffith* v. *Connecticut,* 218 U. S. 563, 31 S. Ct. 132, 134, 54 L. Ed. 1151. From the time of Moses to the present, there has been almost continuous recognition among the more advanced nations of the power in government to prohibit usurious charges on loans. *Dunham* v. *Gould,* 16 Johns. (N. Y.), 367, 376, *et seq.,* 8 Am. Dec. 323. It is too late now to question the exercise of that power. *State* v. *Sherman,* 18 Wyo. 169, 105 P. 299, 301, 27 L. R. A. (N. S.) 898, Ann. Cas. 1912C, 819; *State* v. *Griffith,* 83 Conn. 1, 74 A. 1068-9; *Otis* v. *Parker,* 187 U. S. 606, 609, 23 S. Ct. 168, 47 L. Ed. 323. The West Virginia Small Loans Act follows, with minor changes, the Uniform Small-Loan Law drafted by the Russell Sage Foundation after thorough study and investigation of the small loan business. With slight variations that draft has been enacted in many states; and a number of other states have passed statutes based upon "the same theory as to supervision, rates, regulation and necessary powers" as the draft. Ryan, Usury, 222. So far as we are apprised, in every instance where such laws have had appellate review they have been upheld. See particularly, *Sweat* v. *Commonwealth,* 152 Va. 1041, 148 S. E. 774; *Palmore* v. *Baltimore Rr. Co.,* 156 Md. 4, 142 A. 495; *Alabama Brokerage Co.* v. *Boston,* 18 Ala. App. 495, 93 So. 289; *Mutual Loan Co.* v. *Martell,* 200 Mass. 482, 86 N. E. 916, 43 L. R. A. (N. S.) 746, 128 Am. St. Rep. 446, 222 U. S. 225, 32 S. Ct. 74, 56 L. Ed. 175, Ann. Cas. 1913 B, 529; *People* v. *Stokes,* 281 Ill. 159, 118 N. E. 87; *Warner* v. *People,* 71 Colo. 559, 208 P. 459; *Badger* v. *State,* 154 Ga. 443, 114 S. E. 635; *Levin* v. *Morris Plan Corporation,* (N. J.) 174 A. 237, 12 N. J. Misc. 666; *Dunn* v. *State,* 122 Ohio St. 431, 172 N. E. 148;

*Commonwealth* v. *Puder,* 261 Pa. 129, 104 A. 505.

Plaintiff contends that it is not loaning money to the wage earner, but is purchasing outright the assignment of his wages, and cites the usual definition of assignment, etc. Unfortunately for this contention, a loan, for the purposes of the Act, is defined by the Act itself, section 16, as *the payment of money or credit, in consideration of the assignment of wages.*

Plaintiff further contends that in any event the loan contemplated by the Act is one wherein the lender makes his profit off the wage earner; and that the Act does not apply to its business because the check and merchandise coupon given the wage earner, together equal in value the wages assigned, and its profit is paid by the merchant. In considering this contention, we must bear in mind that the Act is remedial and "should be liberally construed so as to suppress the mischief and advance the remedy." *Central Missouri Trust Co.* v. *Smith,* 213 Mo. App. 106, 247 S. W. 241. Accord: *Gibbs-Hargrave Shoe Co.* v. *Peek,* 212 Ala. 633, 103 So. 672; *Eaker* v. *Bryant,* 24 Cal. App. 87, 140 P. 310; *In re Pittock,* case No. 11,189, 19 Fed. Cas., 745. The obvious legislative purpose in regulating the assignment of wages is to enable wage earners, without paying excessive interest, to obtain cash needed in advance of pay day. Hence, section 17 of the Act requires that the amount of the loan be "paid to the borrower simultaneously with its execution." Nominally, plaintiff pays the wage earner *pro tanto* a check. Yet, to obtain the value of his merchandise coupon and cause the merchant to pay therefor in accordance with plaintiff's plan, *he must spend the entire check for merchandise.* If he does so, the check and coupon become in effect merely an order for the merchandise, and under a remedial construction of the Act, do not constitute *the simultaneous payment* required of the lender. If to procure immediate money, the wage earner cashes his check, plaintiff profits directly off him, and not the merchant—an alternative also unlawful. Thus in practice the illegality of plaintiff's business is patent. Under the Act the identity of the one who pays usury to

the lender is not material. Following the interdiction above copied from section 18, it prescribes: "The foregoing prohibition shall apply to any * * * corporation * * * which by any device, subterfuge or pretense whatever, shall * * * receive greater interest, consideration or charges than is authorized by this act for any such loan * * *." Thus the one fact only required by the Act to corrupt a statutory loan is *the receipt by the lender of excessive charges.* Where this occurs, as was said by Lord Mansfield in 1774, "the wit of man cannot find a shift to take it out of the statute." *Floyer* v. *Edwards,* 1 Cowp. 112, 114-15. Accord: *Brakeley* v. *Tuttle,* 3 W. Va. 86, 101; *Crim* v. *Post,* 41 W. Va. 397, 23 S. E. 613; *Bank* v. *Kirby,* 100 Va. 498, 42 S. E. 303; *Clarke* v. *Sheehan,* 47 N. Y. 188, 195; *Pope* v. *Marshall,* 78 Ga. 635, 4 S. E. 116; *Carozza* v. *Finance Co.,* 149 Md. 223, 131 A. 332, 43 A. L. R. 1, 11. Consequently, a usurious transaction is not validated through an arrangement, purposely planned as that of plaintiff, to have a third person pay the usury. *Levy* v. *Gadsby,* 3 Cranch (U. S.), 180, 2 L. Ed. 404; *Hamilton* v. *Brennan,* 90 Hun. 340, 35 N. Y. S. 805; *Spalding* v. *Bank,* 12 Ohio 544; *Tucker* v. *Fouts,* 73 Fla. 1215, 76 So. 130, L. R. A. 1917 F, 916; 66 C. J., subject Usury, section 165; Williston, Contracts, section 1693. "If the thing forbidden by law is done, the law is violated, and it is wholly unimportant by what particular method the violation is effected." *Borcherling* v. *Trefz,* 40 N. J. Eq. 503, 507, 2 A. 369, 372.

The decree is affirmed.

*Affirmed.*

KENNA, PRESIDENT, concurring:

I entertain no doubt that the terms of our so-called Small Loan Act are sufficiently broad to cover the business being conducted by the plaintiff, and neither do I doubt that there is nothing inherently unconstitutional in the act. The majority opinion satisfies me fully upon these points. But there is a further contention advanced by the plaintiff which I do not believe the majority opinion adequately covers. That contention is that the Small

Loan Act *cannot constitutionally be applied* to the business of the plaintiff, even though it may be a constitutional act, because, prior to the adoption of the Small Loan Act, plaintiff had entered into contracts with certain Clarksburg merchants which required it to engage in the very kind of business that it was then, and still is, conducting, and to apply the terms of the Small Loan Act to the business conducted by the plaintiff so that it can be criminally prosecuted for conducting that business would impair the obligation of plaintiff's contracts with the Clarksburg merchants. It will be observed that this is a question separate and apart from the constitutionality of the Small Loan Act itself. The plaintiff contends that it made contracts with certain Clarksburg merchants by which it bound itself to engage in the business of purchasing assignments of earned wages payable in not more than two weeks in amounts not to exceed fifty dollars, and in exchange for such assignments to issue its check to the wage earner for ninety per cent of the amount of the wages assigned, and to attach to that check a separate coupon redeemable by the contract merchants and calling for the remaining ten per cent of the amount of the wage assignment in merchandise. These contracts, according to the plaintiff's contention, required it to direct the wage earner to go to the establishment of one of the merchants with whom plaintiff had a contract and to there purchase the aggregate of the check and merchandise coupon in merchandise, thus giving to the wage earner the full amount of his wage assignment in merchandise. The plaintiff contends that in exchange for the cash business that this scheme meant to the Clarksburg merchants, these merchants contracted that they would make no charge against the plaintiff nor the wage earner for the amount of the merchandise coupon they honored, but would simply cash the plaintiff's check amounting to ninety per cent of the price of the merchandise furnished.

The contention of the plaintiff is that these contracts, which were entered into prior to the passage of the Small Loan Act, were at that time strictly legal, that they did

not violate the general statute against usury and that to apply now the provisions of the Small Loan Act to prevent their being carried out constitutes an impairment of the obligation of those contracts. Its contention is that it received nothing from the wage earner, that the wage earner received one hundred per cent of the amount of his wage assignment in goods from the merchant, and that the only compensation to the plaintiff was received by it from the merchant by reason of the fact that the plaintiff was called upon to redeem only the check it had given to the wage earner for ninety per cent of the amount of the assignment, the additional ten per cent merchandise coupon being honored by the merchant but not redeemed by the plaintiff.

It will be seen that the contention of plaintiff under the contract clause of the Federal. Constitution is not answered by saying that its business comes within the terms of the Small Loan Act. That contention depends upon the legality or illegality of the business of the plaintiff prior to the passage of the Small Loan Act, and, of course, is independent of its terms. If what the plaintiff was required to do under its contracts with the Clarksburg merchants amounted to the taking of usury within the then existing statute, its contracts with the Clarksburg merchants were illegal and could not be the subject of impairment under the contract clause of the Federal Constitution.

At the time the contracts with the Clarksburg merchants were entered into our statute (sec. 5, chap. 96, Code of 1923) provided: "All contracts and assurances made directly or indirectly for the loan or forbearance of money or other thing at a greater rate of interest than six per cent * * * shall be void * * *."

The proof in this case tends strongly to show that in a great many instances the wage earner detached the ten per cent merchandise coupon from his check procured from the plaintiff and simply cashed the check, receiving in money ninety per cent of his wage assignment and, in effect, paying ten per cent of his earned wages to the plaintiff for a two-weeks' advance of money. As I read

the record, the plaintiff's proof does not satisfactorily meet this question. I think that the record shows that the plaintiff had every reason to know that a very material, if not the greater, part of its business consisted in giving to the wage earner ninety per cent of the amount of his wage assignment in money and in receiving from him ten per cent interest for a two-weeks' loan. I think the clear inference to be drawn from the proof is that the method devised by plaintiff for conducting its business was conceived with the idea of making that method lend itself to that sort of transaction. I cannot otherwise account for the fact that instead of giving an order in full of the wage assignment for merchandise alone, ninety per cent of what was given was made the equivalent of cash. The explanation offered in this record by the plaintiff to the effect that the check and merchandise order were made separable for the purpose of avoiding additional bookkeeping, I think, is totally without merit. It will be observed further that the transaction operated to require the wage earner to spend the entire amount of his wage assignment with a single merchant. It could not be divided among two or more, whereas, by cashing the plaintiff's check the wage earner could spend ninety per cent of his assignment where he pleased, losing the benefit of the merchandise order amounting to ten per cent of the total wage assignment.

As far as result to it was concerned, it was a matter of indifference to plaintiff whether the wage earner took both the check and the merchandise order to one of the contract merchants and there procured one hundred per cent of the amount of the wage assignment in merchandise, or whether he simply detached the merchandise order from the check and used the check for ninety per cent of the wage assignment. In either event, the plaintiff would be required to pay only ninety per cent of the wage assignment that it had received. It may well be that a considerable part of the plaintiff's business was done with wage earners who received one hundred per cent of their wage assignment from the contract merchants in goods. I think that this record shows also, however, that a very

considerable part of the plaintiff's business was done with wage earners who did not use the merchandise orders and who received nothing for their wage assignments but the ninety per cent of their amounts which they procured by cashing the plaintiff checks. I have no doubt from the proof that the plaintiff knew, or had every reason to know, that its plan of business was being largely adapted to the procedure by which the wage earner merely cashed its check. This procedure resulted in a transaction that was plainly usurious, and outrageously so.

From the foregoing it would appear that the plaintiff could fulfill the essential terms of its contracts with the Clarksburg merchants by simply issuing to the wage earner an order for one hundred per cent of the amount of his wage assignment redeemable by any one of the contract merchants in goods, the settlement between the plaintiff and the merchant to be subject to a ten per cent discount. For the plaintiff by the issuance of its check to make it possible for the wage earner to procure ninety per cent of the amount of his wage assignment in cash, does not seem to be at all necessary to the fulfillment of its contracts with the Clarksburg merchants. It would seem that that phase of the matter could be eliminated without impairing the plaintiff's contracts. If it were eliminated it might well be that a method based entirely upon merchandise orders honestly carried out as to the quality of the goods and the price, and otherwise *bona fide* so as not to constitute a mere shift for the charging of usury, would be sustained. If, on the other hand, the contracts of the plaintiff with the Clarksburg merchants cannot be substantially performed unless the plaintiff does give to the wage earner ninety per cent of his wage assignment in the form of a check convertible into cash which, when so converted, places the transaction upon a usurious basis as between the wage earner and the plaintiff, then those contracts are tainted with usury and the subsequent passage of the Small Loan Act did not impair their obligation within the contract clause of the Federal Constitution.

This record is not clear as to the method of handling renewals, although it is admitted that plaintiff's manner of doing business permitted the renewal or extension of the period for collecting under the wage assignment. It is difficult to see how the extension or renewal of the wage assignment could be managed on a basis that would give to the plaintiff for the renewal period a return commensurate with the return that it received for the first two weeks without making an arrangement with the wage earner which would be plainly usurious for the renewal period. This would be so without regard to whether the wage earner in question had received one hundred per cent of the amount of his wage assignment in merchandise or had received only ninety per cent of it through cashing the plaintiff's check.

In my opinion, it is perfectly plain from this record that when the wage assignment was given to the plaintiff, it gave in return to the wage earner a contract under which the wage earner could exercise an option. He could elect either to take both the check and the merchandise coupon to one of the contract merchants and receive one hundred per cent of his wage assignment in merchandise, or he could disregard the separable merchandise coupon and deal directly with the plaintiff, receiving ninety per cent of his wage assignment in cash and paying one hundred per cent of the wage assignment at the end of two weeks or less. I have not attempted to compute the interest rate that plaintiff would receive upon that part of its business that resulted in the wage earner receiving cash, but it is plain that the interest rate was outrageously usurious. It is equally plain that the plaintiff knew the wage earner had the option offered him by plaintiff to disregard the merchandise coupon and make the wage assignment a cash transaction directly with plaintiff, and knew furthermore that a large number of its customers availed themselves of this option. It is perfectly plain that the Clarksburg merchants with whom plaintiff contracted knew that plaintiff's contract with the wage earner could be converted into a usurious direct loan by simply ignoring the merchandise coupon

and using the check to obtain cash. This, I think, is sufficient to taint the entire business conducted by the plaintiff with usury under the statute as it existed prior to the adoption of our so-called Small Loan Act.

Of the many strong utterances on the question of disregarding the form of a transaction and getting at its substance and result in determining whether it is usurious, I qoute only an apt one in this jurisdiction. In *Crimm* v. *Post,* 41 W. Va. 297, 23 S. E. 613, it is stated: "A search for usury shall not stop at the mere form of the bargain and contract relative to such loan, but that all shifts and devices intended to cover a usurious loan or forbearance shall be pushed aside, and the transaction dealt with as usury if it be such in fact."

For the reasons given in the majority opinion concerning the constitutionality of the Small Loan Act and the question of whether that act is sufficiently broad to cover the business being conducted by the plaintiff, and for the reasons herein given concerning the question of whether the terms of our Small Loan Act can constitutionally be applied to the business of the plaintiff in the light of the contract clause of the Federal Constitution, I concur.