John A. Nattinger et al., appellees, v. Andrew J. Howard et al., appellants.

Filed February 1, 1918.   No. 19800.

1. **Boundaries: Monuments.** The location of original government corners, if clearly established, will control recitals in the original government ' field notes that may be at variance therewith, and such corners are controlling, no matter how inaccurate they may be nor how erroneously they may be placed.

2. ——: ——. In such case, where a discrepancy is shown as between monuments and measurements, the monuments· control.

3. **Injunction: Repeated Trespasses.** "Equity will afford relief by the process of injunction against repeated acts of trespass, especially where committed under a claim which indicates a continuance and constant repetition of it." *Hackney v. McIninch*, 79 Neb. 128.

Appeal from. the district court for Lincoln county: Hanson M. Grimes, Judge. *Affirmed.*

*Hoagland & Hoagland, James T. Keefe* and *George N. Gibbs,* for appellants.

*Wilcox & Halligan, contra.*

Dean, J.

This is an injunction suit begun in Lincoln county to enjoin the board of county commissioners from vacating road No. 28 and changing its location, for approximately 6 miles of its distance, to a point varying approximately 133· to 435 feet east of its present location. Andrew J. and Charles A. Howard were made party defendants to enjoin them from trespassing upon or attempting to gain possession of a strip of land 2 miles in length and about 300 feet in width that plaintiffs claim to own, and that lies east of the road where now established and west of the location of the road proposed to be established by defendants. Plaintiffs are owners of sections 24 and 25, and the defendants

Howard own the east half of sections 23 and 26, lying directly west of plaintiffs' land. The ownership of the two-mile strip is in dispute between plaintiffs and the Howards, but obviously that question cannot be decided in this action. In 1886 the road in dispute and as now located was established by the county commissioners in pursuance of a petition for its establishment on the section line. Plaintiffs maintain that the road as then established and as traveled ever since is on the section line as shown by the government survey and monuments, while the defendants argue that it is approximately from 133 to 435 feet west of the section line. In pursuance of their contention one of the defendants Howard and 26 other citizens, on January 31, 1914, filed a petition "for the vacation of a part of county road No. 28," being the road in dispute, and also a petition "for the establishment of a county road commencing at the northwest corner of section 1, * * * and running thence directly south on the section line." The board granted the prayers of both petitions.

At the close of the hearing by the trial court the county board was perpetually enjoined from vacating the 1886 road and from establishing the proposed 1914 road. The defendants Howard were likewise enjoined from interfering with plaintiffs' possession of the two-mile strip of land until such time as the defendants "in a proper action, establish their right to the possession of said lands claimed by them." All defendants appealed.

At the trial it developed that at least two surveys by county surveyors were made subsequent to the original government survey of 1869 or 1870. One of these was made in the eighties and is known as the Orr survey, and the other as the Cochran survey of 1912. Plaintiffs contend that the Orr survey and the 1886 road follow the original section-line monuments established by the government. The defendants argue that the Cochran

survey is on the true section line, but they locate it from 133 to 435 feet east of the 1886 road.

A. D. Orr was the main witness on the part of plaintiffs. He testified that he came to Lincoln county in July, 1884, and that soon after his arrival he saw substantially all of the original government monuments, stakes, and pits on the section line where the 1886 road was soon afterwards established. He filed and made settlement on government land in the immediate vicinity shortly after his arrival, and lived in the neighborhood from 1884 to 1903. In 1885 he helped to build a fence along the west side of section 25 on the line of the original government survey. He says the fence that is now on the east side of the 1886 road line is at the same place where the 1885 fence was built. He testified that fire guards, approximately a mile in length, were plowed out soon after or about the time that the 1886 road was established, and that both fence and fire guards bordered on what was then or afterwards became the east line of the 1886 road.

Mr. Orr was deputy county surveyor in 1886 and soon afterwards became county surveyor. From long residence and experience he had good opportunity to know by actual observation the location of the government monuments in question at a time when the country was comparatively new and when, as one witness testified, the government corners in dispute were so plainly marked that they could readily be seen from a passing wagon. As county surveyor or as deputy he made the survey for the establishment of the 1886 road, and said it was located with respect to the government monuments "just as close as you could get and not run into the holes, the old pits," and that the old 1886 road is now located, as then, on the line of the original government survey as disclosed by the monuments plainly to be seen at that time. The testimony of this witness in all essential points is clearly corroborated by that of five or six witnesses, old-time residents of the county,

102 Neb.—12

some, if not all, of whom located in the vicinity of the road in the early eighties and have lived in the county ever since. They testified that they knew the location of the corners and other landmarks in dispute from actual observation.

Surveyor Cochran was the main witness produced by the defense. He testified: "Q. Now, * * * Mr. Cochran, in making this survey you made it entirely from the field notes? A. Yes, sir." He also testified that he located the line in part "by proportionate measurements north, south, east, and west." Defendants argue in their brief that "the Cochran line and corners are corroborated by the government field notes and by the equal distance on the two-mile strip going east and west for the entire distance through the township."

We do not understand the Cochran rule for which counsel contend to be correct, nor do we find ourselves in accord with defendants' conclusion. It is elementary that the corners established by the original survey under federal authority are controlling, no matter how inaccurate they may be nor how erroneously they may be placed. The location of original government corners, if clearly established, will control recitals in the original government field notes that may be at variance therewith. Where there is a conflict between monuments and measurements the monuments control. Any other rule would cause the utmost confusion. *Johnson v. Preston*, 9 Neb. 474; *Clark v. Thornburg*, 66 Neb. 717; *Diehl v. Zanger*, 39 Mich. 601; *Climer v. Wallace*, 28 Mo. 556; *Hoekman v. Iowa Civil Township*, 28 S. Dak. 206.

The testimony respecting the location of the government corners clearly preponderates in favor of plaintiffs. Fairly considered, the record discloses that the 1886 road has been continuously traveled at its present location and in all essential respects has been recognized and used as a public highway ever since the middle eighties. The trial court was clearly right in finding that the Orr survey is based upon and follows the section lines es-

tablished by the original government survey, and that the road in question from the northwest corner of section 1 to the southwest corner of section 36 is now established thereon as located in 1886. It is interesting to note that the board of county commissioners, in regard to the disputed road, granted the prayer of the 1914 petition of Howard and others "to establish a road on the true section line." To the same effect was the prayer of the 1886 road petition. So that a determination of the true location of the original government section line seems to settle the main dispute.

Plaintiffs deny the jurisdiction of the county board to entertain the 1914 road petition, but that point we do not find it necessary to decide. Questions pertaining to land titles have been raised by the respective parties, but we do not decide them.

Defendants argue that there is a misjoinder of causes of action and of parties defendant. The objection is technical. 22 Cyc. 916, gives this rule: "Where the act sought to be enjoined is threatened or being performed by more than one, all may be joined as defendants." In *Watson v. Sutherland,* 5 Wall. (U. S.) 74, Mr. Justice Davis for the court says: "The absence of a plain and adequate remedy at law affords the only test of equity jurisdiction, and the application of this principle to a particular case must depend altogether upon the character of the case, as disclosed in the proceedings."

In the present case the county board were about to vacate a public road that had been established and used for about 30 years and relocate it at another point less than 500 feet distant, under an apparent misapprenhension as to the true location of the government section line. The defendants Howard, in pursuance of an inaccurate survey, were claiming ownership of land adjacent to the road in question whereof the title is in dispute as between them and plaintiffs, and they actually took possession of a part of it. It was therefore proper

under all the circumstances disclosed by the record that the defendants Howard, in the language of the decree of the trial court, should be enjoined until such time as an appropriate action is brought to procure the settlement of disputed property rights. In this connection it may be observed that the defendants Howard in their brief announce an intention to begin such action. *Sillasen v. Winterer*, 76 Neb. 52; *Watson v. Sutherland*, 5 Wall. (U. S.) 74; *Hackney v. McIninch*, 79 Neb. 128; *Williams v. Riley*, 79 Neb. 554.

It is impractical to analyze at greater length the mass of testimony that we find in the voluminous record before us. To do so would extend this opinion to an unwarranted length. We deem it sufficient to say that we find no reversible error in the record. The judgment of the trial court is therefore in all respects

AFFIRMED.

SEDGWICK, J., not sitting.