## THE MISSOURI VALLEY LIFE INSURANCE COMPANY *v.* KITTLE and others.

*(Circuit Court, D. Nebraska.* May, 1880.

USURY—QUESTION OF FACT.—Any agreement, device or shift to reserve or take more than the law permits for use of money loaned is usury, and whether by such means more than the legal rate of interest has been contracted for is a question of fact to be collected from the whole of the transaction as it passed between the parties.

SAME—AGREEMENT FOR INSURANCE IN LENDER'S COMPANY.—A transaction whereby a party, in order to secure a loan of money, contracts to pay 12 per cent. per annum interest, the maximum rate allowed by law, and also as a part of the same transaction, and in consideration of such loan, agrees to take from the party loaning the money a policy of insurance, and to pay premiums thereon, is usurious under the statute of Nebraska.

SAME—PAYMENT OF INSURANCE PREMIUMS.—Payments made in such a case, under the name of premiums on the insurance policy, must be regarded as paid on the loan; the insurance contract, made as it was to cover usury, being held void.

*J. M. Woolworth,* for plaintiff.

*E. Wakely,* for defendant.

McCRARY, C. J.   Bill in equity brought to foreclose a mortgage upon certain real estate in Nebraska, executed by Robert Kittle and wife to the plaintiff, to secure the payment of a certain promissory note for $2,500.

The defence is that the note sued on is usurious. The legal rate of interest under the law of Nebraska is 12 per cent. per annum, and this rate is contracted for by the terms of the note. It is claimed by the defendants that, in addition to the lawful interest thus provided for, a further consideration for the loan was exacted by the plaintiff under the cover of a transaction of insurance entered into between the plaintiff and defendant Robert Kittle. The plaintiff is a corporation organized under the laws of Kansas, and its purposes are declared by article 4 of its charter, among other things, to be "to make insurance upon the lives of individuals, * * * and to make such legal investments of all moneys received as premiums for policies issued and from

other sources as will best promote the interests of all concerned; and, carrying out the objects of said corporation, may loan the money of the corporation at a percentage not exceeding 20 per cent. per annum." It is clear that the company was organized for the purpose of engaging in the business of insuring the lives of individuals and of loaning money, and it does not appear, either from the charter or the evidence, that the loaning of money was merely incidental to the business of insurance. It is pretty evident, I think, that the company looked to the income to be derived from investments and loans as the chief source of its profits; but, however this may be, it is safe to assume that loaning money was one of the primary objects for which the company was created.

The defendant Robert Kittle applied to the plaintiff for a loan of money. He did not desire, and did not apply for, a policy of insurance upon his life. He was informed in substance that the company was loaning money, and would loan him $2,500 upon satisfactory security, provided he would take from plaintiff a policy of insurance upon his own life or that of some other person for $5,000, and pay the premiums, amounting to about $300 per annum. Whether more than the legal rate of interest has been contracted for is a question of fact to be collected from the whole of the transaction as it passed between the parties. We are to inquire whether there was an agreement, device or shift to reserve or take more than the law permits. It is not usual to express an usurious contract upon the face of a written agreement. "The charge of usury," says Mr. Tyler, "in most instances attaches to pretended cases of exchange of credits or commodities, or when a profit is realized for something besides the use of the money loaned or the debt forborne." Tyler on Usury, 105. We must, therefore, inquire whether, considering the whole transaction, there has been a successful effort on the part of the plaintiff to obtain, under color of the insurance transaction, exorbitant and unlawful gain for the use or forbearance of the money loaned to defendant Robert Kittle. Were these two separate

and independent *bona fide* transactions between the parties— one a loan of money at a lawful rate of interest, and the other the taking by defendant Robert Kittle of a policy of insurance upon his life from the plaintiff? Or were the two so intermingled as to constitute only one transaction, one result of which was that plaintiff actually received or contracted to receive more than 12 per cent. per annum interest as a consideration for the use of the money loaned?

The evidence, as it appears in the depositions, might leave us in serious doubt as to the true answer to be given to these questions, but the matter is rendered reasonably clear by reference to the mortgage sued on, which must be accepted as an authoritative statement of the contract as understood by the parties themselves, and which provides as follows: "And the parties of the first part hereby agree, in consideration of the aforesaid loan, to take out and keep in force during the continuance of said loan a policy of life insurance in the Missouri Life Insurance Company aforesaid, upon his own life or the life of some other person, and upon which he hereby agrees to pay or cause to be paid to said company the annual premium thereon, and not less than $310 per annum. And it is further agreed in consideration of said loan that all renewals thereof, or extensions of time of payment thereof, are upon the express condition of the payments upon said life insurance policy being made when due;   *   *   *   that any neglect or refusal so to do shall cause the whole amount of said loan to become immediately due and payable, any agreement of renewal or extension of payment to the contrary notwithstanding."

This language is explicit, and from it we learn that the two transactions were, in some respects at least, blended into one. The insurance was taken in consideration of the loan. It was not a clause inserted in pursuance of a policy to loan only to policy-holders, for it stipulates that the policy to be taken may be upon the life of the borrower "or the life of some other person."

It was the profit to be derived from the transaction of in-

surance that was demanded "in consideration of the loan," it being expressly declared that premiums amounting to not less than $302 per annum were to be paid to said company. It was further agreed, "in consideration of said loan," that a failure to pay premiums on the policy of insurance should work a forfeiture of all renewals or extensions of time of payment of the loan, and cause the whole amount thereof, both principal and interest, to become immediately due. The contract of insurance was very clearly demanded by the plaintiff as a condition precedent to, and an additional consideration for, the loan of the sum of $2,500 to defendant Robert Kittle. It was a thing of value to the company—a transaction out of which it was to make a considerable profit; and, as 12 per cent. per annum had been otherwise contracted for and reserved, the agreement for additional compensation for said loan rendered the said loan usurious. To hold otherwise would be not only to disregard the plain terms of the contract, as expressed in the mortgage, but also to point out the way by which insurance companies may easily evade the statutes of the several states prohibiting usury.

In this case the payments which have been made under the name of premiums on the insurance policy must be regarded as paid on account of said loan; the insurance contract, made as it was as a cover for usury, being held void.

The statute of Nebraska on the subject of usury in force when this loan was made, to-wit, the eighteenth day of November, 1872, will determine the rights of the parties in view of this opinion, and decree will be entered accordingly.

**Mr. Justice MILLER concurred in the foregoing opinion.**