34489.   PEEBLES *v.* THE STATE.

DECIDED FEBRUARY 20, 1953.

*Fred B. Davis, Oliver, Oliver & Davis,* for plaintiff in error.
*Andrew J. Ryan Jr., Solicitor-General, Sylvan A. Garfunkel, Thomas M. Johnson Jr., Assistant Solicitors-General,* contra.

TOWNSEND, J. Code § 57-117 provides in part as follows: "No person, company or corporation shall reserve, charge or take for any loan or advance of money, or forbearance to enforce the collection of any sum of money, any rate of interest greater than five per centum per month, either directly or indirectly, by way of commission for advances, discount, exchange, the purchase of salary or wages, by notarial or other fees, by any contract, contrivance, or device whatever." The State here contends that that part of the $3 per week above 5% per month reserved by the defendant on the $20 weekly loan constituted usury within the meaning of this Code section. The defendant contends that all of the $3 except 1½% per month, or 32 cents, constitutes legitimate cost of insuring the borrower so as to protect the lender from loss. That a lender may by contract with a borrower obtain insurance to protect the former from loss to the extent of the loan, and charge the cost of procuring such insurance to the borrower, and that such cost cannot be counted as a charge for the money loaned, is well settled in this State. See *Sledd* v. *Pilot Life Ins. Co.*, 52 *Ga. App.* 326 (183 S. E. 199). However, where the evidence authorizes the finding that the purported insurance policy fails to constitute a contract of insurance, or where the charges for procuring it are not actually such in good faith, but on the other hand such charges, or a substantial part thereof, are actually reserved as interest

for the use of the money loaned, and the purported contract of insurance or a part thereof constitutes only a contrivance or device for the reservation of interest for the use of the money loaned, then such insurance policy, or the part thereof found to be such a contrivance or device, will be held and construed to be interest reserved for the use of the money loaned.

Accordingly, a study of the insurance policy, the application, and the authorization must be made in order to determine whether the trial court was authorized to find as a matter of fact that the cost of procuring the insurance here was not in good faith to insure the lender from loss, or was in whole or in part a contrivance or device for the purpose of reserving interest for the use of money loaned.

The defendant made application to Piedmont Life Insurance Company for a policy of group indebtedness insurance to insure debtors "under loans . . which may be of level amount repayable in a lump sum within six months or of reducing amount payable in equal monthly installments for not to exceed six consecutive months from the date of the loan." The premiums on the policy so issued were, as to each debtor, as follows: for life insurance, "$.16 2/3 per $100.00 original amount of each level amount loan multiplied by the number of months in the duration of the loan," and, for the health and accident insurance, "$.60 per $10 of monthly benefit." It is accordingly obvious that both the application and policy contemplated monthly insurance to cover monthly loans, or loans of not more than six months. As to life insurance, the debtor paid four cents weekly, which was one fourth of his monthly premium, and gave him a full month's coverage, paid in weekly instalments.

As to the sickness and accident insurance, however, the debtor paid each *week* $2.63, which was the premium for a full *month's* coverage. There was thus collected on this type of insurance a sum which was four times as great as the premium specified in the policy on the coverage of $43.83 specified in the debtor's insurance authorization, and which the defendant certified that he was obtaining for this debtor. Further, even this sum did not give the coverage certified by the defendant. As to sickness insurance, there was no coverage whatever, because under the policy sickness benefits could not commence until 15 days

after each note was made, and they terminated at the end of the original loan date, which was 7 days after the note was made. As to accident coverage, the first three days of each policy certificate were excluded, which left four days of coverage under each monthly premium (collected weekly) at a rate of $1.46 per day, or a maximum benefit of $5.84. There is in addition a hospital benefit of $5 for each day of hospitalization. It would therefore be impossible, under the use to which the defendant put the policy by applying it to weekly notes, for a debtor to recover any amount whatever for illness, but it would be theoretically possible for him to recover $35 for hospital benefits and $5.84 for accident disability, or a total of $40.83, if he were disabled by accident on the day the loan was made, and remained hospitalized the entire week. He could not under any circumstances collect more than this amount, and accordingly could never receive in benefits the sum of $43.83 for which he applied and on which each of his premiums was figured, and which the defendant certified that he would be eligible to receive.

In addition, the defendant each *week* charged a policy writing fee of 25 cents for the coverage afforded by the *monthly* premium, and each week collected a full *monthly* premium. Whether or not the defendant remitted these premiums to the insurance company, and whether or not he received any part of such premium money back as commissions, is not shown by the evidence, and of course the burden would have been upon the State to produce this testimony, and not on the defendant to prove the nature of his agency relation, if any, to the insurance company. However, he admitted receiving and retaining a 25-cent fee weekly for making out insurance certificates based on a monthly premium and perfectly adequate to afford monthly coverage provided they had been applied to monthly loans as contemplated by the defendant's application for insurance and the policy issued to him thereunder. The application of such policy to *weekly* loans by the defendant materially reduced the coverage of the debtor, materially increased his expenses, and in addition benefited the defendant to the extent of 75 cents per month over and above the fee of 25 cents to which he was legitimately entitled for writing the one-month certificate of insurance and collecting the one-month premium.

The court was therefore authorized to find that the use to which the contract of insurance was put constituted a contrivance or device by which the defendant obtained 75 cents in policy-writing fees to which he was not legitimately entitled, and was thus authorized to construe the insurance premiums collected, to the extent of 75 cents per month, as interest reserved for the use of the money loaned. This 75 cents, added to the 32 cents admittedly collected by the defendant as interest on the $20 indebtedness per month, amounts to $1.07, or more than 5% per month reserved by the defendant for the use of the money loaned, and accordingly is sufficient to sustain the conviction of usury. Under the facts of this case, the policy of insurance was not a straightforward transaction, as in the *Sledd* case, supra, but was a contrivance to obtain and reserve additional sums for the use of the money equally as obnoxious as the salary-buying transactions condemned in *Jackson* v. *Bloodworth*, 41 *Ga. App.* 216 (152 S. E. 289), and *Hinton* v. *Mack Purchasing Co.*, 41 *Ga. App.* 823 (155 S. E. 78).

The trial court did not err in overruling the motion for a new trial.

*Judgment affirmed. Gardner, P. J., and Carlisle, J., concur.*