STATE OF NEBRASKA EX REL. CLARENCE S. BECK, ATTORNEY GENERAL, AND THE DEPARTMENT OF BANKING OF THE STATE OF NEBRASKA, APPELLANT, v. ASSOCIATES DISCOUNT CORPORATION, A FOREIGN CORPORATION, ET AL., APPELLEES.

77 N. W. 2d 215

Filed May 25, 1956. No. 33943.

684

685

*Clarence S. Beck,* Attorney General, and *Robert A. Nelson,* for appellant.

*Matthews, Kelley & Delehant* and *Woods, Aitken & Aitken,* for appellees.

*Gross, Welch, Vinardi & Kauffman,* amicus curiae.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, State of Nebraska ex rel. Clarence S. Beck, Attorney General, and the Department of Banking of

the State of Nebraska, brought this action against defendants, Associates Discount Corporation, a foreign corporation, and Jack F. Kemnitz, its resident agent and branch manager. The parties will generally be designated as plaintiff or defendants, or by name as the occasion requires.

The basis of the action was the factually alleged unlawful operation of a loan business in Omaha by defendants without having procured a license, whereby defendants, by means of described devices and subterfuges, have exacted usurious interest from the borrowers.

In its amended and supplemental petition, hereinafter generally called petition, plaintiff prayed for the court to find and adjudge that defendants and each of them have been operating an installment loan business in Nebraska wrongfully and in violation of law; that defendants' method of doing business is a device and subterfuge, engaged in with the intent of evading the usury laws of this state; that temporary and permanent injunctions be granted; that the notes, mortgages, and other instruments of indebtedness taken by defendants be declared void and uncollectible and should be cancelled; that a receiver be appointed to administer the affairs of defendants' business under the order and direction of the court; and for general equitable relief.

Defendants filed a motion to strike a portion of paragraph XI, and all of paragraphs XVII, XVIII, XIX, XX, and XXI of plaintiff's petition, and, subject to prior ruling upon such motion, defendants separately demurred to plaintiff's petition upon the following identical grounds: "1. That the plaintiffs' amended and supplemental petition does not state facts sufficient to constitute a cause of action against this defendant.

"2. That the plaintiff's amended and supplemental petition does not state facts sufficient to constitute a cause of action against this defendant in that the Installment Loan Act, Sections 45-114 to 45-158, both inclusive, Revised Statutes of Nebraska, 1943, as amended, and

particularly Sections 45-137 and 45-138 thereof are violative of Article III, Section 14 of the Nebraska Constitution and therefore void in that said Statutes attempt to amend and are in conflict with Section 45-105 which is a prior act and the new act (Sections 45-114 to 45-158 and Sections 45-137 and 45-138) made no mentions of or reference to or repeal of said Section 45-105.

"3. That the plaintiffs' amended and supplemental petition does not state facts sufficient to constitute a cause of action against this defendant in that the Installment Loan Act, Sections 45-114 to 45-158 both inclusive and particularly Sections 45-137 and 45-138, Revised Statutes of Nebraska, 1943, as amended, are violative of Article III Section 18 of the Nebraska Constitution and therefore void in that said statutes were passed by the Legislature as local or special laws regulating the interest on money.

"4. That several causes of action are improperly joined in said amended and supplemental petition.

"5. That plaintiffs do not have the legal capacity to sue defendants in this action and attempt thereby to secure an adjudication of the validity of various contracts to which plaintiffs are not parties and in which plaintiffs have no right, title or interest.

"6. That there is a defect of parties plaintiff necessary and indispensable to the adjudication of contract rights demanded in plaintiffs' amended and supplemental petition.

"7. That there is a misjoinder of parties defendant."

Thereafter the trial court sitting en banc sustained defendants' motions to strike in toto, and sustained paragraphs 1, 4, 5, 6, and 7, but overruled paragraphs 2 and 3 of defendants' demurrers. Thereupon, plaintiff elected to stand upon its petition, and judgment was rendered against plaintiff and in favor of defendants, and plaintiff's action was dismissed, with costs taxed to plaintiff. Plaintiff then perfected an appeal from the sustaining of defendants' motions to strike and their demurrers, and

from the judgment rendered, assigning: (1) That the trial court erred in sustaining defendants' motion to strike and their demurrers and rendering judgment against plaintiff and in favor of defendants; and (2) that the trial court erred in refusing to give plaintiff a hearing upon its application for and in refusing to grant a temporary injunction and appoint a receiver. We sustain the assignments, and in doing so a temporary injunction is hereby granted and the receiver heretofore appointed by this court is continued in service, all as hereinafter ordered and directed.

"A general demurrer admits all allegations of fact in the pleading to which it is addressed, if the allegations are issuable, relevant, material, and well pleaded, but does not admit the pleader's conclusions, except if supported by, and necessarily resulting from, the facts pleaded." Reid v. City of Omaha, 150 Neb. 286, 34 N. W. 2d 375. As stated in Martin v. City of Lincoln, 155 Neb. 845, 53 N. W. 2d 923, citing numerous authorities from this jurisdiction: "The allegations of fact contained in the petition must be taken as true under the rule that a general demurrer admits the truth of all alleged material facts and the reasonable inferences to be drawn therefrom." Also, as stated in State ex rel. Walker v. Board of Commissioners, 141 Neb. 172, 3 N. W. 2d 196, citing numerous authorities from this jurisdiction: "Coming then to the demurrer of the remaining defendants, we start with the legal proposition that the demurrer admits the truth of all material facts well pleaded, and the intendments and inferences that fairly and reasonably may be drawn therefrom." Further, as stated in Kinney Loan & Finance Co. v. Sumner, 159 Neb. 57, 65 N. W. 2d 240, quoting with approval from Freeman v. Elder, 158 Neb. 364, 63 N. W. 2d 327: " 'A general demurrer tests the substantive legal rights of parties upon admitted facts, including proper and reasonable inferences of law and fact which may be drawn from facts which are well pleaded. If the petition states

facts which entitle the plaintiff to relief, whether legal or equitable, it is not demurrable upon the ground that it does not state facts sufficient to constitute a cause of action.' "

In the light of such authorities and those subsequently cited and discussed, we have examined the admitted allegations in plaintiff's petition. They are in substance as follows: Clarence S. Beck, the duly elected and qualified Attorney General of this state, and the Department of Banking, an executive department of this state, are charged with the administration of laws relating to licensing and supervision of loan companies under sections 45-114 to 45-162, R. R. S. 1943.

Defendant Associates Discount Corporation is an Indiana corporation, qualified to do business in this state as a foreign corporation, with its Nebraska office located at 216 W. O. W. Building, Fourteenth and Farnam Streets, Omaha. The names and addresses of its officers and directors residing in Indiana are set forth. Defendant corporation is a wholly owned subsidiary of Associates Investment Company, an Indiana corporation, with its principal place of business in Associates Building, South Bend, Indiana. Defendant Jack F. Kemnitz is a resident of Omaha and for several years last past has been branch manager and general supervisor of the business of defendant corporation in this state and has aided in the operation of said business in the manner hereinafter set forth. Defendants, without having procured a license to operate an installment loan business in this state, have conducted such business with the intent of evading the usury laws of the state; and have engaged in a device and subterfuge by means of which they have exacted excessive, unlawful, exorbitant, unconscionable, and usurious charges for the making of installment loans to purchasers of automobiles. For the purpose of carrying out such device and subterfuge, defendant corporation purports to be engaged solely in the business of purchasing, at a discount, from auto-

mobile dealers, notes and mortgages covering the sale of automobiles, but in fact none of such contracts represent bona fide sale transactions but constitute direct loans by defendant corporation to the purchasers of such automobiles.

Defendants solicit automobile dealers to finance their purported time sale transactions, and as an inducement and consideration therefor offer and agree to rebate to such dealers a percentage of the charges made to the purchasers, and chattel mortgage and note forms are furnished such dealers by defendants. In the sale of automobiles, purchasers are not quoted agreed time sale prices but only the cash price is mentioned, and such purchasers are then required to sign a note and mortgage in blank.

Thereafter, such blank instruments are delivered to defendant Kemnitz or some other agent of defendant corporation, who call at the place of business of such dealers, and such blank instruments are taken to the office of defendant corporation where the interest and other charges are inserted in such contracts. The interest included in the contracts is clearly in excess of 9 percent per annum, and in addition thereto charges are added for property damage insurance on the automobile, and in most cases also for health and accident, or credit life insurance, or both, although no application is made for such insurance by the borrower and such charges are made without their knowledge or consent. The property damage insurance is placed with Emmco Insurance Company, an Indiana Corporation, which is another wholly owned subsidiary of Associates Investment Company. The charges made for such insurance are in excessive and unreasonable amounts and constitute additional charges for the use of money advanced to the borrower by defendants.

Because there is no contract between the buyer and the seller as to any credit price, defendants control the entire financial transaction, and defendant corporation

is in fact the principal in such financial transaction. However, in order to make the transaction appear to be a bona fide time sale agreement between the buyer and seller, and to further carry out said device and subterfuge, the note and mortgage are made payable to the dealer who in turn purports to endorse same to defendant corporation without recourse.

Also, in order to secure additional excessive, unlawful, and usurious charges, the majority of such loans are made for a period of 1 year, with the first 11 monthly payments being in equal amounts, and the twelfth payment consisting of a large or balloon payment. In most cases, the borrower is unable to make such balloon payment when due, and defendants then make a new loan and require the borrower to sign a new note and mortgage, payable to defendant corporation. Included in said note and mortgage is the amount of the balloon payment together with interest in an excessive and usurious amount, greatly in excess of the interest permitted by law, and in addition thereto, as a condition to the making of the loan, charges are made for property damage insurance on the automobile together with additional charges for health and accident, or credit life insurance, or both, which charges are in excessive and unreasonable amounts and constitute additional charges for the use of the money by the borrower. The new contract usually provides for equal monthly installments, with the final payment being a balloon payment.

Due to the unlawful, exorbitant, and confiscatory charges made upon these loans, the amount applied to the principal balance each year is small, and the loan contract is rewritten numerous times before the borrower is able to make final payment. This method of operation by defendants is contrary to the declared public policy of the State of Nebraska and in violation of the civil and criminal laws of this state, and all loans made by defendants in violation of installment loan laws and statutes are void and uncollectible.

These loans are made to persons of moderate means, including a large number of service men whose circumstances make it necessary for them to secure credit in order to own an automobile for business purposes, to furnish transportation to and from work, and for family use. Due to the unlawful, exorbitant, and confiscatory charges made on such loans, the interest of the borrower in the automobile given as security is reduced to such an extent that it becomes impossible for such borrowers to secure loans from other sources; and "that if a borrower fails to meet the payments demanded by the defendants on such void and unlawful loans the defendants threaten to and do replevin the automobile of such borrower" who is not in a position to defend against the collection methods used by defendants to enforce payment of the unlawful, void, and unconscionable loans. The quoted portion above was that portion of paragraph XI which the trial court struck from plaintiff's petition.

Plaintiff's petition also alleged that in addition to the employment of the aforesaid devices and subterfuges, defendants have violated the provisions of the Installment Loan Act, sections 45-114 to 45-162, R. R. S. 1943, in 10 specified factual particulars too voluminous to here recite, and are continuing to do so, all of which required the appointment of a receiver, and the granting of an injunction.

Plaintiff's amended and supplemental petition also set forth certain facts occurring after the filing of their original petition, all of which allegations were stricken therefrom by the trial court. Such allegations were as follows: The original petition of plaintiff was filed on July 7, 1955, and on the same day the trial court entered a temporary restraining order restraining defendants from "continuing the making of loans at unlawful and usurious rates in the manner described in Plaintiff's Petition or in any other manner contrary to law or from collecting or attempting to collect any of the unlawful and void loans heretofore made." Such order

further fixed July 15, 1955, at 2:30 p. m. as the time for hearing on plaintiff's application for a temporary injunction and for the appointment of a receiver. On that date, plaintiff appeared before the court prepared to offer evidence in support of its application for a temporary injunction and for the appointment of a receiver, but defendants insisted that they were first entitled to be heard on certain motions and demurrers filed to plaintiff's petition.

Plaintiff then filed a motion for an order impounding the books and records of defendants on the ground that they had been violating the temporary restraining order entered by the court. Evidence was introduced by both plaintiff and defendants thereon, and at the conclusion of said hearing the court entered findings that defendants had violated the temporary restraining order and that the delay occasioned in securing the appointment of a receiver was hazardous to the rights of interested parties, and entered an order directing the sheriff of Douglas County to forthwith take and maintain temporary custody until further order of the court of all books, files, papers, notes, mortgages, and other documents pertaining to the loan business of defendants. The court then continued the hearing on plaintiff's application for a temporary injunction and for the appointment of a receiver until July 19, 1955, at 1:30 p. m.

On July 19, 1955, plaintiff appeared before the court, again prepared to offer evidence in support of its application for a temporary injunction and for the appointment of a receiver. However, prior to the introduction of any evidence, defendants made application for return of the books, records, and documents held in custody by the sheriff under the order of court, and for a dissolution of the temporary restraining order, and the court, without a hearing, then entered an order dissolving the temporary restraining order except that portion which restrained defendants from removing any of their records, files, papers, documents, notes, mort-

gages, and other evidences of indebtedness, conditioned upon defendant corporation filing a good and sufficient corporate surety bond in the penal sum of $1,000,000.

Plaintiff was not permitted to present its evidence in support of its application for a temporary injunction and appointment of a receiver, but instead arguments were had on defendants' motion to strike, and on the same day, July 19, 1955, an order was entered overruling 16 of the 17 paragraphs of defendants' motion and sustaining one paragraph thereof, thereby striking one paragraph out of plaintiff's original petition. On July 20, 1955, argument was had on the separate demurrers of defendants to plaintiff's original petition, following which the matter was taken under advisement by the court and plaintiff's application for temporary injunction was continued until further order of the court. A reargument of said demurrers was had by a panel of three judges on September 7, 1955, and the matter was taken under advisement. In the meantime, plaintiff was not granted a hearing upon its application for a temporary injunction and the appointment of a receiver. Immediately after the entry of the order by the court on July 19, 1955, dissolving the temporary restraining order which prohibited defendants from collecting or attempting to collect the void and unlawful loans described in plaintiff's original petition, the defendants entered into a concerted campaign to collect such void and unlawful loans, refusing to accept payment according to the terms of the written instruments. but demanding payment of the entire balance, and the borrowers were contacted by letter, telephone, and personal calls, and threatened that unless the loans were paid, their automobiles would be replevined. Since August 4, 1955, some 40 replevin actions have been filed in the district court of Douglas County against such borrowers, and the court docket is becoming clogged with such cases. The statutes of Nebraska do not provide for a redelivery bond in replevin cases, and these borrowers

are unable to secure a return of their automobiles pending the final determination of such replevin actions. The majority of such borrowers require an automobile in order to earn a livelihood for themselves and their families, are unable to defend the actions brought against them, and are compelled to meet the demands of defendants. The bond posted by defendants is ineffective to enable the borrowers to defend against the collection methods of defendants, irreparable injury will be caused unless relief is granted according to the prayer of plaintiff's petition, and defendants will continue to force collection of the void and unlawful loans unless enjoined by this court.

In that connection, the record herein discloses that on September 12, 1955, an order was entered by the trial court sustaining defendants' separate demurrers to plaintiff's original petition, upon the ground that it did not state facts sufficient to constitute a cause of action against defendants. Thereafter, on September 26, 1955, plaintiff filed a motion requesting leave to file instanter the amended and supplemental petition heretofore set forth. After notice and hearing, leave was granted by order entered October 17, 1955, and on that date plaintiff filed its amended and supplemental petition. On October 18, 1955, defendants' motion to strike and separate demurrers thereto, were filed. On November 17, 1955, after hearing thereon October 26, 1955, they were sustained, and plaintiff, having elected to stand on its petition, judgment was rendered in favor of defendants as heretofore recited, and plaintiff appealed to this court. Thereafter, upon application and hearing, this court, on December 3, 1955, granted a temporary restraining order and appointed a receiver, which, upon motion of defendants, showing by the parties, and hearing thereof, we refused to dissolve or set aside. State ex rel. Beck v. Associates Discount Corp., 161 Neb. 410, 73 N. W. 2d 673.

We will first discuss whether or not the trial court

erred in sustaining defendants' motion to strike. Contrary to defendants' contention, that question is before this court on this appeal, and we conclude that the trial court erred in so doing. In that connection, section 25-856, R. R. S. 1943, provides in part: "Either party may be allowed, on notice, and on such terms as to costs as the court may prescribe, to file a supplemental petition * * * alleging facts material to the case, occurring after the former petition * * *." Such section was construed and applied by this court in Flagg v. Flagg, 39 Neb. 229, 58 N. W. 109, and Miles v. Martin, 103 Neb. 261, 171 N. W. 907. In the latter opinion, it is said: "The supplemental petition was only incidental to the granting of complete relief. It was therefore proper to allow it to be filed."

Section 25-833, R. R. S. 1943, provides in part: "If redundant, scandalous or irrelevant matter be inserted in any pleading, it may be stricken out on motion of the party prejudiced thereby; * * *."

In In re Estate of Wise, 144 Neb. 273, 13 N. W. 2d 146, this court held: "For the purposes of determining the relevancy and materiality of allegations in a pleading, a motion to strike admits the truth of all facts well pleaded and any inferences fairly deductible therefrom.

"Redundancy consists of the needless repetition of material allegations, or of the insertion of irrelevant matter.

"Matter is irrelevant in a pleading which has no bearing upon the subject matter of the controversy, and cannot affect the decision of the court.

"Under the Code system of pleading, it is not necessary to state a cause of action or defense in any particular form. The facts are to be stated. All that the law requires is that there shall be a cause of action or defense.

"A plaintiff has the right to set out his entire statement of facts constituting his alleged cause of action, and where such action is based on a series of acts, which

together constitute the allegation of one complete transaction, a portion of the same may not be stricken out against plaintiff's objection." As said in that opinion, quoting from Lincoln Mortgage & Trust Co. v. Hutchins, 55 Neb. 158, 75 N. W. 538: "'A party has no absolute right to have his adversary's pleading pruned to suit his fancy.'"

Also, in 41 Am. Jur., Pleading, § 350, p. 530, it is said: "But allegations which are proper and essential to the statement of the plaintiff's cause of action * * * cannot, of course, be stricken for irrelevancy or immateriality. Nor will the court strike allegations which tend more fully to state and explain the claim, although they may not be strictly necessary. And the objectionable part cannot be stricken out where enough will not remain to make a cause of action." Further, in such respect the allegation of facts in a petition with relation to violations of the usury laws by defendants, which are set forth in language such as that used at bar, are not scandalous.

The allegations of plaintiff's petition which were stricken by the trial court were all incidental to the necessity of granting a temporary injunction, the appointment of a receiver, and complete relief. They were erroneously stricken and will be considered by this court in determining whether or not plaintiff's assignments of error should be sustained and judgment for defendants should be reversed.

Since the judgment is reversed and the cause is remanded for trial upon the merits, we deem it necessary to pass upon the constitutional questions raised by defendants' demurrers and discussed in briefs of counsel. In that respect, sections 45-101 to 45-113, R. R. S. 1943, are general statutes which contain the interest and usury provisions relating to all ordinary loans and other specified indebtedness taken yearly or for a shorter period. On the other hand, sections 45-114 to 45-158, R. R. S. 1943, are original, independent, special

statutes complete in themselves, which relate solely to installment loans not exceeding $1,000, and in excess of $1,000. Their purpose and design is to license and control the business of making such installment loans, and to restrict the enforcement and collection of illegal installment loans once they have been made by either licensees or nonlicensees, an all-inclusive and proper classification. Thus, the inhibitory provisions thereof include and apply to all lenders of installment loans, whether they be licensees or nonlicensees. We therefore conclude that sections 45-114 to 45-158, R. R. S. 1943, are not local or special laws "Regulating the interest on money" in violation of Article III, section 18, Constitution of Nebraska. See, Althaus v. State, 99 Neb. 465, 156 N. W. 1038, cited with approvel in Mack Investment Co. v. Dominy, 140 Neb. 709, 1 N. W. 2d 295, Nitzel & Co. v. Nelson, 144 Neb. 662, 14 N. W. 2d 197, and Motors Acceptance Corp. v. McLain, 154 Neb. 354, 47 N. W. 2d 919.

Also, being original, independent, special statutes complete in themselves and having relation only to installment loans, a particular subject matter, their original enactment and subsequent amendments were not in conflict with and were not required to amend or repeal, and made no pretense of amending or repealing section 45-105, R. R. S. 1943. Thus, sections 45-114 to 45-158, R. R. S. 1943, do not violate that part of Article III, section 14, Constitution of Nebraska, which provides: "And no law shall be amended unless the new act contain the section or sections as amended and the section or sections so amended shall be repealed." See Peterson v. Hancock, 155 Neb. 801, 54 N. W. 2d 85.

With respect to installment loans, section 45-114, R. R. S. 1943, provides in part: "The word 'person,' when used in sections 45-114 to 45-155, means individuals, partnerships, associations, banks, trust companies, savings banks, building and loan associations, trusts, corporations, and all other legal entities."

Section 45-128, R. R. S. 1943, provides in part: "Any firm or individual members thereof, partnership or individual members thereof, association or individual members thereof, or corporation or officers thereof, or person, who by any device, subterfuge or pretense whatsoever, shall engage in or continue any of the kinds of business or enterprise permitted to licensees by sections 45-114 to 45-155 without having obtained the license therein required, with intent to evade the provisions of said sections, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be * * *" punished as therein provided.

In that connection also, section 45-155, R. R. S. 1943, which as originally enacted was a part of the same section with what is now section 45-128, R. R. S. 1943, (Laws 1941, c. 90, § 14, p. 350) provides: "Violations of sections 45-114 to 45-155 in connection with any indebtedness, however acquired, shall render such indebtedness void and uncollectible."

Section 45-137, R. R. S. 1943, provides in part: "Every licensee hereunder may make loans, not exceeding one thousand dollars in principal amount, and may contract for and receive thereon charges at a rate not exceeding thirty-six per cent per annum on that part of the unpaid principal balance on any loan not in excess of one hundred and fifty dollars, thirty per cent per annum on that part of the principal balance on any loan in excess of one hundred and fifty dollars and not in excess of three hundred dollars, and nine per cent per annum on any remainder of such unpaid principal balance. * * * Charges on loans made under sections 45-114 to 45-155, shall not be paid, deducted or received in advance. Such charges shall not be compounded * * *. In addition to the charges herein provided for, no further or other amount whatsoever shall be directly or indirectly charged, contracted for, or received. If any amount in excess of the charges permitted by said sections is charged, contracted for or received, except as the result

of an accidental and bona fide error of computation, the contract of loan shall be void, the licensee shall have no right to collect or receive any principal, interest or charges whatsoever and the licensee and the several members, officers, directors, agents and employees thereof, who shall have participated in such violation, shall be guilty of a misdemeanor, and upon conviction thereof shall be * * *" punished as therein provided.

We conclude from clear and unmistakable language used that any person referred to in section 45-128, R. R. S. 1943, includes not only licensees but also nonlicensees, which defendants are admitted to be. In other words, the permissive provisions of the installment loan statutes apply to licensees, but every inhibitory provision therein applies to both licensees and nonlicensees and the officers and employees of either or both. Thus, as provided in section 45-155, R. R. S. 1943, any violation by defendants of sections 45-114 to 45-155, R. R. S. 1943, in connection with any indebtedness, however acquired, renders such entire indebtedness void and uncollectible.

In that connection also, section 45-138, R. R. S. 1943, provides in part: "No licensee shall directly or indirectly charge, contract for or receive a greater rate of interest than nine per cent per annum upon any loan, or upon any part or all of any aggregate indebtedness of the same person, in excess of one thousand dollars. The foregoing prohibition shall also apply to any licensee who permits any person, as borrower or as endorser, guarantor or surety for any borrower, or otherwise, or any husband and wife jointly or severally, to owe directly or contingently or both to the licensee at any time a sum of more than one thousand dollars for principal; * * *. No licensee shall enter into any contract of loan under sections 45-114 to 45-155, under which the borrower agrees to make any payment of principal more than twenty-one calendar months from the date of making such contract, if such contract is not secured

by a bona fide recorded mortgage on real estate owned by the borrower, or under which the borrower agrees to make payment of principal more than thirty-six calendar months from the date of making such contract, if the contract of loan is secured by a bona fide fully recorded mortgage on real estate owned by the borrower. Every loan contract shall provide for repayment of principal and charges in installments which shall be payable at approximately equal periodic intervals of time and so arranged that no installment is substantially greater in amount than any preceding installment. * * * Any contract of loan made in violation of this paragraph, either knowingly or without the exercise of due care to prevent the same, shall be void and the licensee shall have no right to collect or receive any principal, interest or charges on such loan."

Section 45-139, R. R. S. 1943, provides: "Notwithstanding the provisions of section 45-138 a licensee may require a borrower to insure tangible personal property of a kind usually requiring insurance protection when offered as security for a loan under sections 45-114 to 45-155, against any substantial risk or loss, damage or destruction, for an amount and term and upon conditions which are reasonable and appropriate considering the nature of the property and the amount, maturity, and other circumstances of the loan, and the licensee may be protected by a mortgage clause as the licensee's interest may appear. No other insurance shall be required as a condition precedent to the making of a loan. The premium on the personal property insurance shall not exceed the premium fixed pursuant to law or by the current applicable manual of a recognized standard insurance rating bureau."

Section 45-140, R. R. S. 1943, provides: "The licensee shall, at the time the loan is made, give to the borrower, or if more than one, to one of them, a statement concerning any insurance procured by or through the licensee, which shall include the amount of any pre-

miums which the borrower has paid or is obligated to pay, the amount, the expiration date of the policy, and a concise description of the risks insured. If a borrower procures insurance by or through a licensee, the licensee shall deliver to the borrower within fifteen days after the making of the loan an executed copy of the insurance policy or certificate of insurance."

Section 45-142, R. R. S. 1943, provides in part: "No such person, firm, partnership, corporation or association so licensed shall receive any chattel mortgage * * * signed in blank, but all blank spaces shall be filled in with ink or typewritten or printed with the proper names and amounts, showing the name of the person, firm, partnership, corporation or association by whom the person making the conveyance * * * is employed."

Section 45-143, R. R. S. 1943, provides: "No licensee shall take a power of attorney, or any instrument signed by an attorney in fact and not personally, or any instrument signed in which blanks are left to be filled after execution."

Section 45-145, R. R. S. 1943, provides in part: "Every person, firm, partnership, corporation or association, licensed as provided in sections 45-114 to 45-155 shall, at the time any loan is made, give to the borrower or, if there are two or more borrowers, to one of them, a statement in the English language, on which shall be printed a copy of section 45-137, disclosing in clear and distinct terms (a) the amount and date of the loan, (b) a clear description of the payments required, (c) the type of the security, if any, for the loan, (d) the names and addresses of the licensee and all persons obligated on the note, and (e) the agreed rate of charge."

Section 45-153, R. R. S. 1943, which provides that: "Any person, firm, partnership, corporation or association, or officer or employee thereof, violating any of the provisions of sections 45-138 to 45-145, shall be deemed guilty of a misdemeanor, and upon conviction

thereof shall be * * *" punished as therein provided, also has direct relation to such sections.

With regard thereto, we recently said in Powell v. Edwards, *ante* p. 11, 75 N. W. 2d 122: "This section makes all who violate the inhibitory provisions of the law, whether they be licensees, officers or employees of licensees, or nonlicensees, guilty of a misdemeanor. The language in and of itself is capable of this interpretation and moreover it would be unreasonable to conclude that nonlicensees are free to engage in practices barred to licensees.

"Section 45-154, R. R. S. 1943, provides: 'Any contract of loan, in the making or collection of which any act is done which constitutes a misdemeanor under section 45-153, shall be void and the lender shall have no right to collect or receive any principal, interest or charges whatsoever.'

"If therefore the note in question was conclusively violative of section 45-138, R. R. S. 1943, either in the hands of the plaintiff or in the hands of Securities Acceptance Corporation through the agency of plaintiff then the entire indebtedness was void and uncollectible." Such statement has application here, if, as admitted by defendants, they violated any provisions of sections 45-138 to 45-145, R. R. S. 1943.

Finally, section 45-157, R. R. S. 1943, provides: "Whenever the Department of Banking has reasonable cause to believe that any person is violating or is threatening to or intends to violate sections 45-137 or 45-138, it may, in addition to all actions provided for in this act and without prejudice thereto, enter an order requiring such person to desist or to refrain from such violation. An action may also be brought, on the relation of the Attorney General, and the department, to enjoin such person from engaging in or continuing such violation or from doing any act or acts in furtherance thereof. In any such action an order or judgment may be entered awarding such preliminary or final injunction as may

be deemed proper. In addition to all other means provided by law for the enforcement of a restraining order or injunction, the court, in which such action is brought, shall have power and jurisdiction to impound and appoint a receiver for the property and business of the defendant, including books, papers, documents and records pertaining thereto or so much thereof as the court may deem reasonably necessary to prevent violations of this act through or by means of the use of said property and business. Such receiver, when so appointed and qualified, shall have such powers and duties as to custody, collection, administration, winding up and liquidation of such property and business as shall, from time to time, be conferred upon the said receiver by the court."

The use of the words "any person" and "such person" therein further evidences a deliberate legislative intent to include all persons or parties who violate any of the inhibitory provisions of the installment loan statutes, whether they be licensees or nonlicensees or officers or employees of licensees or nonlicensees, and make them subject to civil and criminal liability for the reasons and in the manner provided therein. That conclusion is in harmony with the public policy clearly enunciated and prescribed by the installment loan statutes. To conclude otherwise would completely emasculate them and permit licensees and nonlicensees to mulch the public at will without statutory prohibition, which the Legislature never intended to permit but clearly sought to prevent.

Defendants' demurrers alleged: "That plaintiffs do not have the legal capacity to sue defendants in this action and attempt thereby to secure an adjudication of the validity of various contracts to which plaintiffs are not parties and in which plaintiffs have no right, title or interest," and "That there is a defect of parties plaintiff necessary and indispensable to the adjudication of contract rights demanded in plaintiffs' amended and

supplemental petition." Such contentions have no merit.

In that connection, the statutory right of plaintiff to maintain this action is specially conferred and expressly authorized by section 45-157, R. R. S. 1943. In such a situation, plaintiff may, as provided by section 25-304, R. R. S. 1943, bring this action "without joining with him, the person for whose benefit it is prosecuted." See Archer v. Musick, 147 Neb. 1018, 25 N. W. 2d 908, 168 A. L. R. 1164. Further, such statutory authority and right is merely a collated expression of the inherent right of the state, which has always existed in the exercise of equity jurisdiction of courts to protect the public by preventing public wrongs arising from repeated, continuous, unlawful acts which are against public policy and result in injury to the public and its welfare. See, In re Debs, 158 U. S. 564, 15 S. Ct. 900, 39 L. Ed. 1092; State v. Pacific Express Co., 80 Neb. 823, 115 N. W. 619, 18 L. R. A. N. S. 664; State v. Chicago, B. & Q. R. R. Co., 88 Neb. 669, 130 N. W. 295, 34 L. R. A. N. S. 250; State ex rel. Spillman v. Heldt, 115 Neb. 435, 213 N. W. 578; State ex rel. Sorensen v. Ak-Sar-Ben Exposition Co., 118 Neb. 851, 226 N. W. 705; State ex rel. Sorensen v. Ak-Sar-Ben Exposition Co., 121 Neb. 248, 236 N. W. 736. In State v. Chicago & N. W. Ry. Co., 147 Neb. 970, 25 N. W. 2d 824, this court held: "Injunction is a proper remedy to be used by the state in the protection of public rights, property, or welfare, whether or not the acts complained of violate a penalty statute and whether or not they constitute a nuisance." See, also, State ex rel. Weasmer v. Manpower of Omaha, Inc., 161 Neb. 387, 73 N. W. 2d 692.

The disastrous effects of usury are universally recognized and in every jurisdiction the state has, as a matter of public policy, enacted some measure of protection for its people from the harsh result and injury to them arising from unconscionable and unlawful exaction for the use of money imposed upon its residents, many of whom are obscure, economically distressed, and unable

to protect themselves. The state itself, represented by the Attorney General, has therefore of necessity, in order to protect its people and prevent public wrongs, emerged as the proper party whose duty it is to represent all the public in defense of the state's own sovereignty and bring such actions as that at bar. In doing so, courts have generally recognized the state's right to the equitable remedies of injunction and receivership as a proper and effective method of controlling unlawful lenders under statutes comparable with our own. See, State ex rel. Smith v. McMahon, 128 Kan. 772, 280 P. 906, 66 A. L. R. 1072; State ex rel. Beck v. Basham, 146 Kan. 181, 70 P. 2d 24; State ex rel. Fatzer v. Miller, 176 Kan. 175, 268 P. 2d 964; State ex rel. Fatzer v. Miller, 177 Kan. 324, 279 P. 2d 223; Commonwealth ex rel. Grauman v. Continental Co., Inc., 275 Ky. 238, 121 S. W. 2d 49; State ex rel. Moore v. Gillian, 141 Fla. 707, 193 So. 751; State ex rel. Goff v. O'Neil, 205 Minn. 366, 286 N. W. 316; Gifford v. State (Tex. Civ. App.), 229 S. W. 2d 949.

In such cases as that at bar, plaintiff represents the public, including the borrowers from defendants, for whose benefit the action is prosecuted. Usury in the making of contracts with borrowers is the affirmative basis for the equitable relief sought. To declare such contracts void and uncollectible without cancellation thereof, or, more appropriately, without enjoining their collection, would permit defendants to subsequently use them only for purposes of unlawful harrassment and extortion, which this action sought to enjoin. Equity is not so helpless. Equity will always strive to do complete justice. To declare such contracts void and uncollectible and enjoin their collection if they are void and uncollectible, is but a necessary incident to the primary purpose of this action which by injunction and receivership sought to put an end to continuous violations of the civil and criminal provisions of the installment loan statutes, enforce forfeitures as provided

therein, and avoid a multiplicity of actions. It was entirely unnecessary to make any of such borrowers parties to this action in order to accomplish its purposes. Section 45-157, R. R. S. 1943, and section 25-304, R. R. S. 1943, not only authorized plaintiff to bring this representative action but also made ample provision for granting the remedies sought if deemed proper in the light of the facts and installment loan statutes. Further, all of such borrowers are regarded not as in pari delicto but as in viniculus to defendants, to whom they owe no duty in equity. See, Davis v. Atlantic Finance Co., 160 Ga. 784, 129 S. E. 51; Cuneo v. Bornstein, 269 Mass. 232, 168 N. E. 810; Horner v. Nitsch, 103 Md. 498, 63 A. 1052; Goble v. O'Connor, 43 Neb. 49, 61 N. W. 131.

Defendants' demurrers also alleged: "That there is a misjoinder of parties defendant." The contention has no merit. In such respect, defendant Jack F. Kemnitz is the resident agent, branch manager, and general supervisor of defendant corporation's business in Nebraska. He aided in the performance and carrying out of the unlawful acts and the unlawful operation of defendant corporation's business, all of which plaintiff sought to enjoin. If, as admitted, he so acted for defendant corporation, he would be equally guilty of violations of the installment loan statutes, both civil and criminal.

In 39 Am. Jur., Nuisances, § 167, p. 437, it is said: "In accordance with the rules applicable in suits for injunctions generally, all persons who contribute to the nuisance complained of may be joined as defendants in a suit to restrain the continuance of the wrong, although they act separately and independently and hence could not be joined as defendants in an action for damages." Also, in Nattinger v. Howard, 102 Neb. 175, 166 N. W. 263, this court approved the statement that: " 'Where the act sought to be enjoined is threatened or being performed by more than one, all may be joined as defendants.' "

Defendants' demurrers also alleged: . "That several causes of action are improperly joined in said amended and supplemental petition." The contention has no merit. An examination of plaintiff's petition clearly discloses that the cause of action stated is the right of plaintiff to injunctive and other incidental and related relief in equity in order to prevent continuation of a public wrong by defendants. While it is true that the general scheme adopted by defendants incorporates several different devices and subterfuges, nevertheless each is but a part of a general scheme for exacting unlawful and usurious interest from the public of this state. The mere fact that more than one equitable remedy is sought does not establish that more than one cause of action is included in plaintiff's petition. As stated in 1 Am. Jur., Actions, § 67, p. 458, citing numerous authorities: "Moreover, the particular nature of the wrong done by the defendant may require the application of different remedies for the enforcement of the plaintiff's right, but that does not mean that there are several causes of action. Cases are legion wherein the plaintiff may be entitled to several remedies for the enforcement of a single wrong, in which event the rules governing joinder of causes of action do not preclude him from presenting in the same pleading distinct and sufficient grounds for recovery, upon a single primary right, especially if he is uncertain which ground can be established."

In testing the sufficiency of plaintiff's petition under the admitted facts, or the sufficiency of the evidence to support the relief sought thereby, it must be kept in mind that this is a case involving the violation of usury laws. Therefore, courts must look through the form to the substance of the transaction. Ordinarily, usurious transactions take forms which on their face appear to be legal. Devices, subterfuges, schemes, and circumvention to conceal usury are innumerable. The use of such devices, subterfuges, schemes, and circumvention

by defendants is illustrated by the factual allegations in plaintiff's petition.

The applicable principle and rationale that courts in usury cases must look through the form to the substance of transactions by unlawful money lenders, is patently illustrated by State ex rel. Spillman v. Central Purchasing Co., 118 Neb. 383, 225 N. W. 46, wherein this court said: "The courts in such a case as this are not bound by forms but will look beyond form to the real substance. Looking through the scheme of the defendant to acquire and retain an unlawful and usurious rate of interest for the use of its money, and discerning the real substance of its transactions, we are of the opinion that its transactions pictured in the evidence were not bona fide purchases of rights of action from its customers, but rather were loans of the defendant to its customers. As such they were strongly infected with usury, were unlawful, and were contrary to the public policy of the state." See, also, Cheney v. Eberhardt, 8 Neb. 423, 1 N. W. 197; 55 Am. Jur., Usury, § 14, p. 332; Scott v. Lloyd, 34 U. S. 418, 9 L. Ed. 178. In Simpson v. Penn Discount Corp., 335 Pa. 172, 5 A. 2d 796, the court said: "As usury is generally accompanied by subterfuge and circumvention of one kind or another to present the color of legality, it is the duty of the court to examine the substance of the transaction as well as its form, and the right to relief will not be denied because parol proof of the usurious character of the transaction contradicts a written instrument."

Also, in Cash Service Co. v. Ward, 118 W. Va. 703, 192 S. E. 344, the concurring opinion, quoting with approval from Crim v. Post, 41 W. Va. 397, 23 S. E. 613, said: " 'A search for usury shall not stop at the mere form of the bargain and contract relative to such loan, but that all shifts and devices intended to cover a usurious loan or forbearance shall be pushed aside, and the transaction dealt with as usury if it be such in fact.' "

Defendants argued that the allegations of plaintiff's

petition disclosed that defendant corporation was not engaged in the lending of money but was engaged solely in purchasing time sale contracts on automobiles. In that respect, they contended that their method of doing business had been approved by this court in Grand Island Finance Co. v. Fowler, 124 Neb. 514, 247 N. W. 429; Fidelity Finance Co. v. Westfall, 127 Neb. 56, 254 N. W. 710; American Loan Plan v. Frazell, 135 Neb. 718, 283 N. W. 836; and Underwriters Acceptance Corp. v. Dunkin, 152 Neb. 550, 41 N. W. 2d 855; and that to sustain plaintiff's position would require reversal of such decisions. We do not agree.

The primary rule established in the above-cited cases is that: "A dealer in automobiles may in good faith sell a car on time for a price in excess of the cash price without tainting the transaction with usury, though the difference in prices may exceed lawful interest for a loan."

In such cases, however, the transaction between the buyer and seller must be a completed bona fide time price sale agreement. In Grand Island Finance Co. v. Fowler, *supra,* our opinion makes clear that the sale must be honestly and in good faith executed by the dealer and purchaser for an agreed credit price in excess of a cash price in order to constitute a bona fide time sale transaction, and that if the transaction is in fact a loan for usury, the agreement is unlawful and void.

As recently as Powell v. Edwards, *supra,* citing the aforesaid cases, this court said: "It is also true that a time sale made in good faith at a price in excess of a cash price, even though the difference exceeds lawful interest for a loan, which price is arrived at by schedules furnished by a finance company which solicits contracts so entered into between a purchaser and a dealer, may not be regarded as tainted with usury. * * *

"These rules however do not apply where it is proved that the transaction was not made in good faith but

that it was a scheme and a device pursued to evade the operation against it of the usury statute.

"The case of Grand Island Finance Co. v. Fowler, *supra,* sustains the validity of transactions made in good faith. It may well be said also to condemn those wherein it has been proved that it was a scheme and device to evade the usury statutes."

Plaintiff's petition discloses that the method of doing business by defendants was not in good faith but was a scheme and a device to make the transactions appear to be bona fide time sale transactions, when in fact they were loans for usury, in violation of the installment loan statutes. In such respect, numerous authorities, including those involving defendants' parent corporation, support those conclusions. See, Jackson v. Commercial Credit Corp., 90 Ga. App. 352, 83 S. E. 2d 76; United Tire & Investment Co. v. Trone, 189 Okl. 120, 113 P. 2d 977; White v. Disher, 232 N. C. 260, 59 S. E. 2d 798; Seebold v. Eustermann, 216 Minn. 566, 13 N. W. 2d 739, 152 A. L. R. 585; Associates Investment Co. v. Thomas (Tex. Civ. App.), 210 S. W. 2d 413; Associates Investment Co. v. Baker (Tex. Civ. App.), 221 S. W. 2d 363; Associates Investment Co. v. Hill (Tex. Civ. App.), 221 S. W. 2d 365; Associates Investment Co. v. Sosa (Tex. Civ. App.), 241 S. W. 2d 703. In Daniel v. First National Bank of Birmingham, 227 F. 2d 353, on rehearing at 228 F. 2d 803, the court denied rehearing and said: "It seems to us that in reality what the Bank is asking this Court to hold is that probably the most numerous class of persons in need of protection from the state and national laws against usury are removed from that protection by the simple expedient of using the term 'time price' as a cloak to conceal usury. That, we of course will not do."

Section 45-143, R. R. S. 1943, specifically provides in part: "No licensee shall take * * * any instrument signed in which blanks are left to be filled after execution." See, also, section 45-142, R. R. S. 1943. Herein,

defendants furnished the dealer with blank forms which the borrower signed in blank without having any agreed time sale price with the dealer. Thereafter, defendants filled in the blanks with usurious charges without the borrower's knowledge or consent, and subsequently rebated a part thereof to the dealer, all of which made it a tripartite loan transaction and a violation of the installment loan statutes.

In addition to the usurious charges directly made, defendants contracted for and received further usurious interest by means of a scheme or device whereby excessive and unlawful usurious charges were added for property damage insurance on the borrower's automobile, and for credit life, health, and accident insurance without application therefor and without the knowledge or consent of the borrower. Section 45-139, R. R. S. 1943, provides that a licensee may require a borrower to insure tangible personal property when offered as security for a loan for an amount and term and upon conditions which are reasonable and appropriate, but premiums therefor cannot exceed those fixed by law or current applicable standard manual rates, but, "No other insurance shall be required as a condition precedent to the making of a loan" and, as provided by section 45-141, R. R. S. 1943, "The licensee shall not require the purchasing of insurance from the licensee as a condition precedent to the making of the loan, and shall not decline existing insurance where such existing insurance is provided by an insurance company duly licensed by this state." Further, section 45-137, R. R. S. 1943, provides in part: "In addition to the charges herein provided for, no further or other amount whatsoever shall be directly or indirectly charged, contracted for, or received."

In that connection, it will be remembered that defendant corporation and Emmco Insurance Company, a corporation, are both wholly owned subsidiaries of Associates Investment Company. In the light of the fore-

going-admitted facts and law, it is conclusive that defendants, by use of their insurance device and subterfuge, were charging and collecting additional compensation for money loaned in violation of the installment loan statute. See, section 45-134, R. R. S. 1943, defining interest; Hubachek's Annotations on Small Loan Laws, p. 156, citing authorities; Strickler v. State Auto Finance Co., 220 Ark. 565, 249 S. W. 2d 307; Tribble v. State, 89 Ga. App. 593, 80 S. E. 2d 711; Peebles v. State, 87 Ga. App. 649, 75 S. E. 2d 35; Texas Finance & Thrift Association v. State (Tex. Civ. App.), 224 S. W. 2d 522; Missouri Valley Life Ins. Co. v. Kittle (8 C. C. A. Neb.), 2 F. 113; Miller v. Life Ins. Co., 118 N. C. 612, 24 S. E. 484, 54 Am. S. R. 741.

Section 45-138, R. R. S. 1943, provides in part: "No licensee shall enter into any contract of loan under sections 45-114 to 45-155, under which the borrower agrees to make any payment of principal more than twenty-one calendar months from the date of making such contract, if such contract is not secured by a bona fide duly recorded mortgage on real estate owned by the borrower, or under which the borrower agrees to make payment of principle more than thirty-six calendar months from the date of making such contract, if the contract of loan is secured by a bona fide duly recorded mortgage on real estate owned by the borrower. Every loan contract shall provide for repayment of principal and charges in installments which shall be payable at approximately equal periodic intervals of time and so arranged that no installment is substantially greater in amount than any preceding installment."

In that regard, the majority of defendants' contracts were made for a period of 1 year, with the first 11 payments in equal amounts, and the twelfth consisting of a large balloon payment. Also, when such balloon payment became due, defendants required the borrowers to sign a new installment note and mortgage payable to defendant corporation, which also contained usurious

charges, in violation of the installment loan statutes. In that respect, defendants argued that the refinancing of the original contracts did not constitute loans but were rescheduling or forbearance of the original contracts which were not affected thereby and could be purged of usury by credit or waiver of interest above 9 percent. We held otherwise in State ex rel. Beck v. Associates Discount Corp., *supra*.

We conclude that such claimed rescheduling or forbearance was simply a renewal or substitute for the original contract which was the purported consideration therefor, and that both were void and uncollectible as in violation of the installment loan statutes. Associates Discount Corp. v. Ruddock (Miss.), 81 So. 2d 249, involved the identical corporation that is defendant herein. The facts therein with regard to rewritten contracts were almost identical with those at bar except that validity of the original contract was not in question. Under statutes comparable with our own, and in answer to the argument that the original contract was not affected by the usurious charges in the rewritten contract, the court, quoting with approval from Chandlee v. Tharp, 161 Miss. 623, 137 So. 540, 78 A. L. R. 445, said: "It is true that the contract here involved was not usurious at its inception, but, when the creditor subsequently received, indirectly, more than 20 per cent per annum interest, it conferred upon the debtor the right to declare all the principal forfeited, and to recover back all payments made on the principal, as well as all usurious interest paid." See, also, 55 Am. Jur., Usury, § 96, p. 390, wherein it is said, citing numerous authorities, among which were Knox v. Williams, 24 Neb. 630, 39 N. W. 786, 8 Am. S. R. 220, and Koehler v. Dodge, 31 Neb. 328, 47 N. W. 913, 28 Am. S. R. 518: "Since the usurious character of a transaction is determined as of the date of its inception, if a contract is usurious in its inception no subsequent transaction will cure it. Hence, where a usurious contract is renewed by the giving of

a renewal or substituted contract, the usury follows into and becomes a part of the latter contract, making it subject to the defense of usury to the same extent as was the original obligation. The taint attaches to all consecutive obligations or securities growing out of the original usurious transaction, and none of the descendant obligations, however remote, are free from it if the descent can be traced." Further, the compensation paid or to be paid for any extension or forbearance of a loan may not exceed the permissible statutory maximum.

In the case at bar, this court entered a temporary restraining order and appointed a receiver in order to protect the subject matter of the litigation. Thereupon, defendants filed motions to direct the clerk of this court to withhold approval of the receiver's bond and to dissolve the temporary restraining order. After showing made by the parties and hearing, this court, in State ex rel. Beck v. Associates Discount Corp., *supra*, rendered an opinion overruling such motions. In the opinion we said with reference to the restraining order: "The order contemplates, in the form in which it was drawn, that defendants are restrained and enjoined from performing the acts therein set out until the application for a temporary injunction can be heard when the appeal is heard on its merits. * * * The order purports to hold the subject of the action in statu quo until the merits of plaintiff's claim to a temporary injunction can be heard de novo on the appeal."

Here it is assigned that the trial court erred in refusing to grant a hearing upon plaintiff's application therefor and in refusing to grant a temporary injunction and appoint a receiver. We sustain the assignment. In doing so, we hereby grant a temporary injunction without requiring plaintiff to furnish bond (section 24-334, R. S. Supp., 1955), and upon like conditions and with like requirements as those contained in our original temporary restraining order entered herein, and the trial court is hereby ordered and directed

to keep such temporary injunction in full force and effect until this cause is disposed of upon the merits, and until time for appeal from any judgment or final order rendered therein has fully elapsed. Likewise, as a remedy ancillary thereto, we hereby order and direct that the receiver heretofore appointed and qualified by this court shall continue to act as such with all the powers and duties contained in the order of this court heretofore entered, until this cause is disposed of upon the merits and until time for appeal from any judgment or final order rendered therein has fully elapsed.

In that connection, Article V, section 2, Constitution of Nebraska, gives this court "such appellate jurisdiction as may be provided by law." Section 24-204, R. R. S. 1943, provides that this court "shall have appellate and final jurisdiction of all matters of appeal and proceedings in error which may be taken from the judgments or decrees of the district court, in all matters of law, fact or equity, where the rules of law or the principles of equity appear from the files, exhibits or records of said court to have been erroneously determined." Section 25-1063, R. R. S. 1943, provides, among other things, that a temporary injunction "may also be granted in any case where it is specially provided by statute" and section 25-1081, R. R. S. 1943, provides that: "A receiver may be appointed by the Supreme Court or the district court or by the judge of either * * * (4) in all cases provided for by special statutes * * *." In such respects, section 45-157, R. R. S. 1943, specially authorizes the granting of a temporary injunction and the appointment of a receiver, and section 25-1064, R. S. Supp., 1955, specifically provides that: "The injunction may be granted at the time of commencing the action, or at any time afterward, before judgment, by the Supreme Court or any judge thereof * * *."

It is in the light of such authorities, together with the admitted allegations of plaintiff's petition, the rec-

ord, and showing by affidavits therein, and our former opinion in State ex rel. Beck v. Associates Discount Corp., *supra,* that we have granted a temporary injunction and continued the receiver, all as heretofore ordered and directed, deeming such action as necessary and indispensable under the circumstances in order to maintain the statu quo and protect the subject matter in litigation pending ultimate disposition of the cause upon its merits.

For reasons heretofore stated, the judgment of the trial court should be and hereby is reversed and the cause is remanded with directions for trial upon the merits in conformity with this opinion. All costs are taxed to defendants.

REVERSED AND REMANDED WITH DIRECTIONS.